## CITY OF COLUMBUS et al. v. UNION PAC. R. CO.

(Circuit Court of Appeals, Eighth Circuit. April 19, 1905.)

No. 2,098.

**1. MUNICIPAL CORPORATIONS—STREETS—VACATION—STATUTES—VALIDITY.**

As the Nebraska organic act, providing that the legislative power of the territory shall extend to all rightful subjects of legislation consistent with the Constitution of the United States and the provisions of the act, except that no law shall be passed interfering with the primary disposal of the soil, etc., contains nothing depriving the Legislature of authority over city streets, the Legislature was authorized to pass Act Jan. 25, 1866, declaring that all streets, parts of streets, etc., situated in the town of Columbus, previously taken by the Union Pacific Railroad for turnouts, standing places for cars, depots, etc., should be vacated so long as the same should be so used, and that a perfect title should be vested in the railroad company by the act, to terminate on the termination of the use.

**2. SAME—CITY ORDINANCES.**

Gen. St. Neb. 1873, c. 9, conferred on cities the right to open or vacate any street, etc., within the city limits, under certain conditions, whenever deemed expedient for the public good, or to give a right of way to any railroad company, etc. Chapter 11, § 83, declared that if it should be necessary, in the location of any part of a railroad, to occupy any street of a municipal corporation, it should be competent for the city and the railroad company to agree on the manner, terms, and conditions on which the same should be used, etc., and, if they are unable to agree, the railroad might appropriate the street in the same manner as provided for the appropriation of property by individuals. *Held*, that under such acts the city of Columbus had power to pass an ordinance vacating certain streets to a railroad company on specified conditions.

**3. SAME—TERMS OF ORDINANCE.**

The ordinance vacating a street was not void as a grant or sale, instead of a vacation, because it contained a provision: "There shall be

and is hereby granted," etc., "to the railroad company that portion of the street vacated for depot purposes."

4. SAME—FORFEITURE.

Where it did not appear that either defendant city or any of its inhabitants would be in any way injured by a change in the location of a railroad's passenger station or freight depot, and the city acquiesced in the change of the passenger depot for 17 years, the city was estopped to claim that such change operated as a forfeiture of the railroad company's rights in certain streets vacated under an ordinance providing for the location of such depots.

Appeal from the Circuit Court of the United States for the District of Nebraska.

John J. Sullivan and W. M. Cornelius, for appellants.

Edson Rich (W. R. Kelly and John N. Baldwin, on the brief), for appellee.

Before SANBORN, Circuit Judge, and PHILIPS and RINER, District Judges.

RINER, District Judge. This was a bill in equity, filed by the Union Pacific Railroad Company, a corporation organized under the laws of the state of Utah, against the city of Columbus and its officers, to enjoin the city from attempting to open M street in the city of Columbus across certain grounds and right of way of the complainant. The complainant claims exclusive possession to that portion of M street crossing its tracks between the southern boundary of Eleventh and the northern boundary of Twelfth street, under and by virtue of an act of the Legislature of the territory of Nebraska, approved on the 25th of January, 1866, section 3 of which reads as follows:

"Sec. 3. That all streets, parts of streets, alleys, highways and other public grounds, situate in the town of Columbus, in the county of Platte, and territory of Nebraska, and heretofore taken, selected, designated, occupied or appropriated by said Union Pacific Railroad Company for turn-outs, standing places, for cars, depots, station houses, turn-tables, water stations, engine houses, and other structures required or used in the construction and operation of said railroad, or for the convenience of the same, or which may be hereafter taken, selected, designated, occupied or appropriated for the purposes aforesaid, be and the same are hereby vacated so long as the same shall be used and occupied by said company, and the full, complete, absolute and perfect title to the same is hereby vested in said Union Pacific Railroad Company for the purposes aforesaid, and for the construction and operation of their said railroad: Provided, that whenever such streets, parts of streets, alleys, highways and other public grounds, shall cease to be used and occupied for the purposes aforesaid, they shall revert to the use of the said town of Columbus and of the inhabitants thereof."

And by virtue of an ordinance, designated in the record as "Ordinance No. 55," sections 1, 2, and 3 of which provide:

"Special Ordinance Granting to the Union Pacific Railroad Company and its Successors the Right of Way Through, Across and Over Certain Streets and Alleys in the City of Columbus.

"Section 1. Be it ordained by the mayor and councilmen of the city of Columbus, there shall be and is hereby granted to the Union Pacific Railroad Company, its successors and assigns, forever, the right to construct, maintain and operate its railroad with single or double track, with necessary and convenient side tracks, turn-outs, and switches, as now located except on Twelfth

street, and operated through, across and over the following described streets and alleys situate in the city of Columbus, to-wit: A, B, C, D, E, F, G, H, I, Washington Avenue, K, L, M, N, O, P, Q, R, S, Eleventh, Twelfth, and Thirteenth streets, for a distance of 100 feet on either side of the center line of the main tracks as now laid out and used, all of the above being within the corporate limits of said city of Columbus, it being the intention that said right of way hereby granted shall embrace all that portion of said streets and alleys for a width of 200 feet being 100 feet on either side of the center line of said railroad as located and built in the year 1866, and as now occupied, and there being hereby granted to said company the right and privilege to run its trains and cars through, across and over said streets and alleys, and to build and connect with its tracks such switches, turn-outs and other appliances and structures as may be necessary and convenient to the operation and use of its road: Provided, that the said railroad company shall remove from that portion of Twelfth street lying west of the east boundary of N street, all switches, turn-outs or side tracks, kept or maintained thereon.

"Sec. 2. That the following streets, alleys and grounds are hereby vacated and granted to the use of said company for its exclusive occupancy, with such tracks, station houses, freight houses, store houses and other structures as may be necessary or convenient to the business and operation of said railroad; provided, that if the same cease to be used for railroad purposes and shall be permanently abandoned by said company, the same shall revert to said city. The streets to be vacated by said ordinance are as follows, to wit: Eleventh street to the western boundary of Q street to the western boundary of the city; Twelfth street from the eastern boundary of N street to the eastern boundary of I street; P street from the northern boundary of Eleventh street to the southern boundary of Twelfth street; M street from the northern boundary of Eleventh street to the southern boundary of Twelfth street, as heretofore located, and K street from alleys in blocks eighty (80) and eighty-one (81) to alleys in blocks ninety-six (96) and ninety-seven (97).

"Sec. 3. That the mayor of said city of Columbus be and he hereby is authorized and required to make, execute and deliver to said Union Pacific Railroad Company, a conveyance in due form of law, granting to said railroad company the right of way through the streets hereintofore named in section one (1) and the right to use, occupy and enjoy the streets hereintofore vacated and granted by section two (2) of this ordinance. Said conveyance to be for the consideration that said railroad company was heretofore built, maintained and operated its road through said city, and shall continue hereafter to so maintain and operate the same, and maintain its depot and freight houses substantially in their present location."

It is also alleged in the bill that by virtue of an ordinance passed by the city council of the city of Columbus on the 15th of June, 1900, it is entitled to the exclusive use of an additional portion of M street, extending 20 feet north of the north line of Twelfth street. Answers were filed by the city and Israel Gluch, a resident of the city of Columbus and a citizen of the state of Nebraska, who was made a party defendant to the bill. To these answers replications were filed, and the case came on for hearing before the Circuit Court upon an agreed statement of facts, resulting in a decree perpetually enjoining the defendants from interfering with the use and occupation of M street from a point 105 feet north of the north line of Eleventh street to the north line of Twelfth street.

The agreed statement of facts shows: That on the 8th of January, 1857, the "Columbus Company." recorded a plat including all of the present city of Columbus, donating the streets and alleys to the use of the public. The deed is as follows:

"Know all men by these presents: That we, the undersigned, A. B. Malcom, president, and James C. Mitchell, secretary, of the Columbus Company, here-

by donate all the streets and alleys as marked and designated on the plat of the within named town, for the use of the public.

"Done by order of the board of directors of said company this 8th day of January, A. D. 1857.

"Witness:         A. B. Malcom, President.
  "A. D. Jones.        James C. Mitchell, Secretary."

That the town of Columbus was incorporated under an act of the territorial legislature of Nebraska, approved October 2, 1858 (Laws 1858, p. 323). That thereafter, on the 11th day of February, 1865, the Legislature passed another act to incorporate Columbus, in Platte county, in the territory of Nebraska (Laws 1865, p. 108). That on the 18th day of August, 1873, the city council of Columbus passed an ordinance known as "Ordinance No. 25," incorporating the city of Columbus, in Platte county, Neb. That the defendant the city of Columbus succeeded to all the rights of the Columbus Company, Columbus Townsite Company, and town of Columbus. That on the 7th day of January, 1877, the Legislature of the state of Nebraska passed an act (Laws 1877, p. 266), entitled "An Act to legalize the incorporation of the city of Columbus, in Platte county, state of Nebraska, and all acts and ordinances of the city council thereof and the officers thereof. That in the year 1877 the complainant, or its predecessor in title, had in operation over and across M street, in said city of Columbus, lines of main, side, and switching tracks. That at the time of the filing of the complainant's bill herein the complainant had 10 main, side, and switching tracks over and across M street. That M street has not been open to public travel across the right of way of complainant at the points covered by its tracks at any time whatsoever. That complainant has not occupied that portion of M street beginning with the north line of Eleventh street, and extending north for about 105 feet, and that that portion has been graded and filled by the city and used by the public generally from the year 1877 to the present time. That the public has at all times since the location of the railroad traveled over and used a strip of ground along and north of side or main tracks between L and N streets, and across M street, within 100 feet of the main line track, but there has never been any highway or road established or laid out, either by state, county, or city action. It is admitted that the fee to the street was in the city, and the record does not show that any questions in relation to the rights of an abutting property owner are involved.

In the absence of constitutional restriction, we think the act of 1866 a valid exercise of legislative power. That acts which would otherwise be nuisances cease to be such when they have the sanction of a valid statute, and that whatever the Legislature may constitutionally authorize to be done is lawful, is too well settled to require the citation of authority. Section 6 of the organic act organizing the territory of Nebraska is as follows:

"Sec. 6. And be it further enacted that the legislative power of the territory shall extend to all rightful subjects of legislation consistent with the Constitution of the United States and the provisions of this act; but no law shall be passed interfering with the primary disposal of the soil, no tax shall be imposed upon the property of the United States, nor shall the lands or other

property of nonresidents be taxed higher than the lands or other property of residents. * * * "

There is nothing in the organic act by way of limitation upon the power of the Legislature which prohibits it from passing an act such as is here complained of. The act in question is a rightful subject of legislation, and is consistent with the Constitution of the United States and the provisions of the organic law. That the powers of the Legislature over the streets of a municipal corporation are greater than the powers of the municipality itself, even where the fee to the streets and the control over them is lodged in the corporation, has been often decided. Mr. Dillon in his work on Municipal Corporations states the rule as follows:

"As respects the public or municipalities, there is, in the absence of special constitutional restriction, no limit upon the power of the Legislature as to the uses to which streets may be devoted."   2 Dillon, Mun. Corp. par. 657.

And, again, in paragraph 666, the same author says:

"The plenary power of the Legislature over streets and highways is such that it may, in the absence of special constitutional restriction, vacate or discontinue the public easement in them, or invest municipal corporations with this authority."

Public corporations are but parts of the machinery employed in carrying on the affairs of the government, and are subject to be changed or modified as the exigencies of the public may demand; and if no restraints on the legislative power of control are found in the Constitution, they must rest alone in the legislative discretion. Kittle v. Fremont, 1 Neb. 329; St. Louis v. Allen, 13 Mo. 400; Richards Co. v. Lawrence County, 12 Ill. 1; State v. Cowan, 29 Mo. 330; Granby v. Thurston, 23 Conn. 416; Langworthy v. Dubuque, 16 Iowa, 271; Bradshaw v. Omaha, 1 Neb. 16; Sinton v. Ashbury, 41 Cal. 530; People v. Pinckney, 32 N. Y. 377.

There are some authorities, it is true, which seemingly conflict with the rule above stated; but we think a careful examination of these cases will disclose that most of them are cases where there has been either an attempt by the Legislature to vacate a street, when the Legislature did not have the power, because of some limitation found in the Constitution of the state, or cases where a city has attempted to vacate a street and the power was not expressly conferred upon it by its charter. In either case the attempted vacation would be without authority of law, and could not, for that reason, be enforced. But no such question arises in this case, and our conclusion is that the act in question violated no provision of the organic act and was valid.

We think, also, that the ordinance complained of was a valid exercise of municipal power conferred upon the city by the statute of the state. It is conceded that at the time this ordinance was passed the common council of the city was governed by the provisions of chapter 9 of the General Statutes of Nebraska of 1873, which, among other things, conferred upon the city the power—

"To open, widen, or otherwise improve or vacate any street, avenue, alley or lane, within the limits of the city, and also to create, open or improve any

new street, avenue, alley or lane: Provided, that all damages sustained by the citizens of the city or the owners of the property therein, shall be ascertained in such manner as shall be provided by ordinance: Provided, further, that whenever any street, avenue, alley or lane shall be vacated, the same shall revert to the owners of the adjacent real estate, one-half to each side thereof."

, "To create, open, widen or extend any street, avenue, lane or alley, or annul, vacate or discontinue the same, whenever deemed expedient for the public good, and to take private property for public use, or for the purpose of giving right of way or other privileges, to any railroad company, or for the purpose of erecting or establishing market houses and market places or for any other public purposes. * * *"

Section 83, c. 11, of the General Statutes of 1873, which was in force at the time of the passage of the ordinance complained of and the execution of the deed, provides as follows:

"If it shall be necessary in the location of any part of any railroad, to occupy any road, street, alley or public way or ground of any kind, or any part thereof, it shall be competent for the municipal or other corporation or public officer or public authorities, owning or having charge thereof, and the railroad company, to agree upon the manner, and upon the terms and conditions upon which the same may be used or occupied; and if said parties shall be unable to agree, thereupon, and it shall be necessary in the judgment of the directors of said railroad company, to use or occupy such road, street, alley or other public way or ground, such company may appropriate so much of the same as may be necessary for the purposes of such road, in the same manner and upon the same terms as is provided for the appropriation of the property of individuals by the eighty-first section of this chapter."

Pursuant to the provisions of these statutes, we think the city had the power to vacate the street in controversy. The mere fact that the Legislature had theretofore authorized the vacation of the street does not affect the question. The state law and the ordinance may both stand together, if not inconsistent.

It is urged, however, that the ordinance is void because it was not only a vacation, but a vacation and grant, or sale. . We concur in the conclusion, reached by the Circuit Court, that the provision, "There shall be and is hereby granted," etc., "to the railroad company that portion of the street vacated for depot purposes," found in the ordinance, did not render the ordinance void. Whitsett v. Union Depot Co., 10 Colo. 243, 15 Pac. 339. In that case, the court said:

"A municipal corporation is not warranted by law in exercising its power to vacate streets in an arbitrary manner and without regard to the interest and convenience of the public or of individual rights; but when the power to vacate exists, and has been exercised with due regard to the interest both of the public and of private rights, the fact that the vacating ordinance provides for the use which is to be made of the street, or portion thereof vacated, does not aid a property holder who seeks to annul the ordinance on the ground that he is interested in keeping the street open. The object to be accomplished in the present case may fairly be said to be one of great interest and convenience to the public. The establishment and construction of a union railroad depot for the use of all railroads entering within or centering in the city is a convenience, not only to all residents of the city, but to the public generally. We are, therefore, of opinion that the privileges granted to the Union Depot Company afford no ground for equitable interposition."

It is also insisted that the railroad company forfeited all rights under section 3 of the ordinance under discussion, because it

changed the location of its passenger station and seeks to change the location of its freight station. The ordinance provides that the depot and freight house shall be maintained substantially in their present location. From the agreed statement of facts it appears that the passenger depot, which was erected in 1887, is distant 538 feet from the original depot, and that the location of the proposed freight depot is distant 988 feet from the original freight depot. The change in the location of the passenger depot was made without objection, and it has existed in its present location for 17 or 18 years. The railroad company claims the right to change its freight depot under the provisions of section 4 of an ordinance of the city, passed June 15, 1900, which provides as follows:

"Sec. 4. The right and privilege is hereby granted Union Pacific Railroad Company to locate and maintain its freight station at such point as it may select between L street and North street in said city of Columbus, notwithstanding the provisions of Ordinance No. 55 of said city. The conditions of said ordinance and the conveyance thereunder are hereby modified accordingly in respect to the location of Union Pacific railroad station."

It does not appear from the record that either the city or any of its inhabitants were in any way injured or damaged by reason of the change made in the location of the passenger station, or that they will be damaged by the proposed change of the location of the freight depot. We may well assume that the city acted upon full information and determined that the change was for the best interests of the city and the public, and we think it should not now be heard to complain if the change is made. The other assignments of error require no discussion.

The decree of the Circuit Court will be affirmed.