### CITY OF SAPULPA v. LAND.

No. 14165—Opinion Filed Jan. 29, 1924.

(Syllabus.)

1. **Municipal Corporations — Charters — General Laws—When Applicable.**

Section 3, article 18, Williams' Ann. Constitution, authorizing cities containing a population of more than 2,000 inhabitants to frame a charter for their own government, not in conflict with the Constitution and laws of the state, reserves to the state a general legislative control in the state over such cities, and the general laws of the state pertaining to any rightful subject of legislation of general public concern, which conflict with any charter provisions of such municipalities, prevail over such charter provisions.

2. **Constitutional Law — Powers—Manner of Doing an Act Excluding Others.**

Where the Constitution confers the power to do a particular act and prescribes the means and manner of doing such act, such means or manner is exclusive of all others.

3. **Statutes—General and Special Laws— Uniform Operation.**

Section 59, article 5, Williams' Ann. Constitution, provides: "Where a general law can be made applicable, no special law shall be enacted." Under this provision of the Constitution, laws of a general nature do not necessarily have to operate upon every locality in the state, but such laws must apply equally to all classes similarly situated and to like conditions and subjects.

4. **Municipal Corporations — Taxation — Manner of Assessment and Collection— Constitutional Law.**

Section 20, article 10, Williams' Ann. Constitution, providing that the Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporations, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes, having expressly prescribed the manner by which the Legislature may authorize the assessment and collection of municipal taxes, excludes the assessment and collection of such taxes in any other manner than pursuant to general laws.

5. **Taxation —Nature of Taxes—How Enforced.**

Taxes are not debts, but are the positive acts of the government and are the creatures of statute, and must be enforced in the manner provided by statute.

6. **Same—Statutes—Delinquent Taxes—Enforcement of Tax Liens on Real Estate.**

The statutes of this state, sections 9730 to 9749, inclusive, Comp. Stat. 1921, provide a full and comprehensive system by which delinquent taxes on real estate may be collected by a sale of such real estate by the county treasurer, the collecting agency, such method, being the only one authorized by the statutes, is exclusive for the enforcement of such tax liens, and a foreclosure of such liens in the district courts of this state is unauthorized.

7. **Statutes—Local or Special Laws—Regulation of Courts.**

Sections 46 and 46-o, article 5, Williams' Ann. Constitution, provide: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law * * * regulating the practice or jurisdiction of * * * the courts." Held, that the jurisdiction and practice of the courts of this state of the same class must be uniform throughout the state.

8. **Courts—Constitutional Law — Distribution of Judicial Power.**

Section 1, article 7, Williams' Ann. Constitution, vests the judicial power of this state in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law. Held, such courts are vested with only such judicial power as is conferred upon them by the Constitution and laws of the state.

**9. Same—Power of Charter City to Confer Jurisdiction in Foreclosure of Tax Liens.**

The jurisdiction of the courts of this state and the regulation of the procedure and practice in said courts is a matter of general public interest, subject to regulation only by the supreme sovereign power of the state; and municipal legislative bodies, operating under a freeholders' charter in this state are without power to confer jurisdiction upon the district courts of this state to decree the creation and foreclosure of tax liens.

**10. Taxation—Regulation—General Laws.**

The subject of taxation is one in which the sovereign power of the state has an interest, and the manner of enforcing tax liens is subject to the general laws of the state.

**11. Municipal Corporations—Special Assessments—Nature.**

An assessment for local improvements, as authorized by section 7 of article 10 of the Constitution, is not a tax in the general acceptation of the term.

**12. Same—Charter Powers—Enforcement of Liens for Assessment—General Laws Controlling.**

Though the charter of a municipal corporation may provide for a lien upon property assessed for local improvements, the municipal legislative body may not provide for the creation of such lien and for methods of enforcement different from that provided by general law of the state in the absence of authorization by, and contrary to, the provisions of the charter of the municipality.

**13. Affirmance of Judgment.**

Record examined, and held, that the judgment of the trial court sustaining the defendant's demurrer to the plaintiff's petition be affirmed.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by the City of Sapulpa against Paul Land to decree and foreclose certain tax liens and special assessment liens against certain real estate in the City of Sapulpa. Defendant files demurrer to the petition, which is by the trial court sustained. Plaintiff brings error. Affirmed.

Albertson & Blakemore, for plaintiff in error.

Walker & Lee, for defendant in error.

KENNAMER, J. The city of Sapulpa, a municipal corporation, plaintiff, instituted this action in the district court of Creek county against Paul Land, defendant, to have decreed a lien on certain lots located in the city of Sapulpa and said real estate lien foreclosed, and said real estate sold to pay the ad valorem taxes due the city of Sapulpa on said lots for the years 1911 to 1921, inclusive; the amount of said municipal taxes alleged to be $756.24 and 18 per cent. penalty.

The petition filed by the plaintiff pleaded a second cause of action in which the plaintiff sought to have decreed a lien against said property for special paving assessment for the years 1911 to 1919, inclusive, and said lien foreclosed to satisfy said indebtedness of $1,667.10 with interest and penalties.

The defendant, Paul Land, filed a general demurrer to each of the causes of action pleaded by the plaintiff in its petition, which demurrer was by the court sustained, and the plaintiff, refusing to plead further, elected to stand upon its petition and prosecutes this appeal to reverse the judgment of the trial court sustaining the demurrer and dismissing the plaintiff's action.

The only question presented on this appeal is whether or not the city of Sapulpa, operating under a freeholders' charter, may provide by ordinance for the assessment and collection of municipal taxes or special assessments in a manner inconsistent with the general laws of the state, and in providing for the collection of such taxes confer jurisdiction or the power upon the district courts of this state to foreclose tax liens in an action to enforce the payment of such taxes. The charter of the city of Sapulpa provided that the board of commissioners of said city may, by ordinance, provide a system for the assessment, equalization, levy, and collection of all municipal taxes not inconsistent with the provisions of the charter. The board of commissioners, pursuant to this charter provision, passed an ordinance authorizing the enforcement and collection of ad valorem and special assessment taxes, penalties, and interest by an action in the district or superior court of Creek county against the record owners of any real estate within the corporate limits of the city of Sapulpa, by a foreclosure of tax liens against said real estate, and authorizing the court to decree a sale of such property and direct the same to be sold by the sheriff of the county in the same manner as is provided by the statutes and laws of Oklahoma for the sale of real estate under execution and the issuance of a sheriff's deed.

Counsel for the city insist that the case of Bodine v. Oklahoma City, 79 Okla. 106, 187 Pac. 209, supports their contention that the city had a right to maintain this action and base their contention upon the following language found in the opinion:

"A charter of the city may provide for the assessment, levy, and collection of a tax independent of the instrumentality provided

by the general laws of the state. Rogers, County Treasurer, v. Bass & Harbour, 64 Okla. 321, 168 Pac. 212, and City of Collinsville v. Ward, 64 Okla. 30, 165 Pac. 1145. Articlie 18 is self-executing. State ex rel. Reardon, County Attorney, v. Scales, 21 Okla. 683, 97 Pac. 584."

See Thurston, County Treasurer, v. Caldwell et al., 40 Okla. 206, 137 Pac. 683.

It is conceded that in the Bodine Case the precise question in the case at bar was not involved. The only question involved in the case, supra, was whether or not the county excise board had authority to revise and correct the budget or estimate of the probable needs of the city for municipal purposes. It is apparent that the matter of the budget for the needs of a city is purely a municipal matter so long as the cost of such budget is within the limitation of the law.

It appears from an examination of the adjudicated cases by this court that this court has uniformly held that the provisions of a charter adopted pursuant to section 3 A, article 18, Williams' Ann. Constitution, become the organic law of the municipality and supersede the laws of the state in conflict therewith in so far as such general laws attempt to regulate purely municipal matters. Owen v. Tulsa, 27 Okla. 264, 111 Pac. 320; Lackey v. State, 29 Okla. 255, 116 Pac. 913; State v. Linn, 49 Okla. 526, 153 Pac. 826; City of Collinsville et al. v. Ward, 64 Okla. 30, 165 Pac. 1145.

A careful examination of these cases and the cases from other jurisdictions leaves the question as to what constitutes purely municipal matters or affairs a question difficult of determination, as there does not appear to be any well-established rule by which it may be determined as to just what affairs or matters are purely municipal. In considering the questions involved in this appeal we deem it advisable to consider the pertinent constitutional provisions which must necessarily be considered in properly determining the same.

Section 3 A of article 18 authorizes any city containing a population of more than 2,000 inhabitants to frame a charter for its own government by electing a board of freeholders composed of two from each ward to draft and prepare such charter. After said charter is submitted to, and approved by, the qualified electors at an election held for that purpose, it must then be submitted to the Governor for his approval, and if the same shall not be in conflict with the Constitution and laws of this state, the Governor is authorized to approve said charter. It is then provided that such charter, upon such approval, shall become the organic law

of such city and supersede any existing charter and all amendments thereto and all ordinances inconsistent with it.

Section 5, art. 10, Williams' Ann. Constitution, provides:

"The power of taxation shall never be surrendered, suspended, or contracted away. Taxes shall be uniform upon the same class of subjects."

Section 7, art. 10, provides:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation."

Section 14, art. 10, provides:

"Taxes shall be levied and collected by general laws, and for public purposes only. * * *"

Section 20, art. 10, provides:

"The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes."

Section 36, art. 5, provides:

"The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever."

Section 59, art. 5, provides:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

Section 1, art. 7, provides:

"The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law."

Section 10, art. 7, of the Constitution provides:

"The district courts shall have original jurisdiction in all cases, civil and criminal, except where exclusive jurisdiction is by this Constitution, or by law, conferred on some other court, and such appellate jurisdiction as may be provided in this Constitution, or by law. * * *"

Sections 46 and 46-o, art. 5, provide:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
*   *   *

"Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate."

Upon a careful consideration of the provisions of section 3A, art. 18, of the Constitution, supra, it is manifest that it was the intention of the framers of the Constitution that all charter provisions must be subject to the general laws of the state, and by constitutional provisions, supra, no special laws shall be enacted where a general law may be made applicable. It is quite evident it was never the intention of the framers of the Constitution for municipal charter provisions, as authorized, to prevail over any general law of the state when its operation must be applicable to citizens alike throughout the state and all citizens are entitled to its protection.

Taxation is the exercise of sovereign authority, and the limitations placed by the Constitution upon the exercise of this sovereign authority must be construed so as to give effect to the intention, as evidenced by the language of such provisions. While it may be conceded that it was the intention of the framers of the Constitution by authorizing municipalities of over 2,000 inhabitants to adopt a charter to afford such inhabitants the fullest measure of local self-government consistent with the Constitution and laws of the state, yet it must be borne in mind that such municipalities, in exercising the power of taxation, become involved in a matter under our system of government which is the proper subject of constitutional and general law. This, for the reason that the exercise of the arbitrary power of taxation is subject to the regulation of the supreme sovereign power, which in such case is the state. This is necessary in order that the tax system may be uniform and afford all citizens equal protection of the law.

It is quite obvious from a fair and full consideration of the various provisions of our Constitution, supra, that it was the evident intention that our system of taxation be one uniform in its operation and effect and that such purpose may only be accomplished by the regulation of the subject by general and uniform laws.

The Constitution plainly provides that where a general law can be made applicable, no special law shall be enacted. This is a most salutary and wise provision of the Constitution, and to hold that the important subject of taxation may be regulated by innumerable charter provisions of various municipalities of this state would, in our opinion, do violence to the plain language of section 59, article 5, supra. Laws of a general nature do not necessarily have to operate upon every locality in the state, but must apply equally to all classes similarly situated and apply to like conditions and subjects. Anderson v. Rittenbusch, 22 Okla. 761, 98 Pac. 1002.

The test is that a statute relating to persons or things as a class is a general law, but one relating to particular persons or things of a class is special. Gay v. Thomas, 5 Okla. 1, 46 Pac. 578; Patterson v. Rousney, 58 Okla. 185, 159 Pac. 633.

We know of no subject that general laws are so peculiarly applicable to as that of taxation. The reason for uniformity in the application of tax laws is apparent. Uniformity in the assessment of the property is the only just procedure. The property must be assessed on a basis for levying the taxes by the various subdivisions of the state at its fair cash value, and it would be manifestly unjust for the supreme sovereign power to assess the taxpayers' property at one value, the county at another, the school district at another, and the city at another, all of which would lead to confusion and injustice. It is equally apparent that uniformity in the method of collecting in the various taxes assessed by the state and its subdivisions is essential to the public interest. It must be plain that for each subdivision of the state to have a different method for the enforcement of collection of taxes would result in gross injustice, confusion, and hardships and oppression not in keeping with the orderly administration of governmental affairs. If the state enforces the payment of its taxes by one method and one of its subdivisions, such as a municipality operating under a charter form of government, by another method, we would have the anomalous situation of the municipality pursuing the taxpayer in a tax foreclosure action while the county treasurer may be advertising the same property to be sold at a tax sale. All of which is contrary to the plain provisions of the Constitution of this state providing that taxes may be collected pursuant to general laws. See sections 14 and 20, article 10, supra.

Section 20 provides the mode by which the Legislature is authorized to provide for the collection of county, city, town, or other municipal taxes, which is by general laws. It is clear from the language of this section of the Constitution that the Legislature is unauthorized to provide for the assessment and collection of municipal taxes except by general laws. The maxim, "Expressio unius est exclusio alterius," is peculiarly applicable to section 20, art. 10, supra. While this maxim must be cautiously applied and should never be applied where its application to the subject-matter would lead to inconsistency or injustice, yet, in view of the manifest intention as evidenced by the language used in the various provisions of the Constitution relating to the method and manner of assessing taxes pursuant to general laws, and the purpose to be accomplished, that of uniformity in the tax system, we are clearly of the opinion that under the expressed provisions of the Constitution taxes must be collected pursuant to general laws. This express method excludes every other.

In the case of State ex rel. Murphy v. Barnes, 24 Fla. 29, 3 South. 433, it is held:

"When the Constitution prescribes the manner of doing a thing, that is in effect a prohibition against the passage of law prescribing a different manner of doing it."

In the case of Parks v. West, 102 Tex. 11, 111 S. W. 728, the rule is announced as follows:

"Where a power is expressly given by the Constitution and the means by which or manner in which it is to be exercised is prescribed, such means or manner is exclusive of all others."

Other authorities supporting this rule are: Board of County Commissioners v. Hammerly, 85 Okla. 53, 204 Pac. 445; Cooley's Constitutional Law, 64; State v. Patterson, 181 Ind. 660, 105 N. E. 228; State ex rel. Frich v. Stark County, 14 N. D. 368, 103 N. W. 913; Page v. Allen, 58 Pa. 338, 98 Am. Dec. 272; Quinn v. State, 35 Ind. 485, 9 Am. Rep. 754; Morris et al. v. Powell, 125 Ind. 281, 25 N. E. 221, 9 L. R. A. 326; State v. Patterson, 181 Ind. 660, 105 N. E. 228; Denney v. State, 144 Ind. 503, 42 N. E. 929, 31 L. R. A. 726; People v. Hutchinson, 172 Ill. 486, 50 N. E. 599, 40 L. R. A. 770; People v. Spruance, 8 Colo. 307, 6 Pac. 831.

In the case of Board of County Commissioners v. Hammerly, supra, in considering the constitutional provisions under consideration in this case applicable to the manner of assessing and collecting taxes, this court used the following language:

"One requirement of the Constitution is as mandatory in its nature as another. It is just as important that taxation and manner of collection thereof should be uniform and equal upon all property as it is that all property should be taxed.

"The act in question not being general in the enforcement and collection of taxes, as provided for under section 14, art. 10, of the Constitution, and delegating the power of collection of taxes in a different manner than that provided by the general laws enacted pursuant to the Constitution of this state, and authorizing persons to collect taxes other than the persons mentioned in section 20, art. 10, of the Constitution, it is therefore null and void."

It is, therefore, our conclusion that taxes in this state must be assessed and collected pursuant to and under the authority of general laws enacted by the Legislature. As to whether a tax lien may be enforced in a foreclosure action instituted in the district courts of this state, it is plain the question necessarily involves two propositions. First, the nature of a tax and the jurisdiction of the court to enforce a tax lien. The great weight of authority supports the rule that a tax is not a debt in the ordinary acceptation of the term. Therefore, a civil action will not lie for its recovery except where the statute expressly confers the right to bring such action, or where the statute has omitted providing any method for the collection of the tax. Corbin v. Young, 24 Kan. 198; Commissioners of Stafford County v. National Bank, 48 Kan. 561; McKeesport Borough v. Fidler, 147 Pa. St. Rep. 532, 23 Atl. 799; Gauen et al. v. Drainage District, 131 Ill. 446, 23 N. E. 633; City of Camden v. Allen, 26 N. J. L. 398; Page & Jones, Taxation by Assessment, vol. 2, par. 1112; Cooley's Taxation (3rd Ed.) page 1718.

Taxes are not debts, but are the positive acts of the government and are the creatures of statute, and must be enforced in the manner provided by the statute. At page 18 of volume 1, Cooley's Taxation, supra, it is said:

"But in general, the conclusion has been reached that when the statute undertakes to provide remedies, and those given do not embrace an action at law, a common-law action for the recovery of the tax as a debt will not lie."

In the case of McKeesport Borough v. Fidler, supra, it was held:

"Nor does it help the case to say that the assessment is to be treated as a sum of money due, and is directly to be collected, and is therefore to be regarded as a debt which can be recovered as ordinary debts are recovered. Being a tax, the as-

sessment cannot be collected as an ordinary debt by a common-law action, unless such remedy is given by statute. This view was fully adopted by the Supreme Court of the United States in the case of Lane Co. v. Oregon, 7 Wall. 71, in which explicit approval is given to various decisions of state courts, cited in the opinion, which hold that assessments of taxes do not create debts which can be enforced by suit."

The statutes of this state, sections 9730 to 9749, inclusive, Comp. Stat. 1921, provide a full and comprehensive system by which delinquent taxes on real estate may be collected, but on an examination of the statutes providing for the collection of taxes the same fail to disclose any authority for the foreclosure of tax liens in the courts of this state and no such right existed at common law; therefore, it is clear that if such right exists in this state it is only by reason of the charter provisions of the municipalities having adopted the freeholders' charter form of government.

The judiciary system of this state is the creature of the Constitution and the statute laws of the state. The supreme sovereign power of this state rests in the people of the state. The exercise of this power must be through the Legislature or the people by means of the initiative or referendum, and this supreme sovereign power having never authorized the enforcement of tax liens in the courts of this state, no such power or jurisdiction is vested in the district courts.

By section 1, article 7, of the Constitution, the judicial power of this state is vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, as may be established by law. The judicial power here conferred by the Constitution is the power to hear and determine those matters which affect the life, liberty, or property of the citizens of the state as distinguished from ministerial power or authority, and the judicial power vested in the courts to determine such controversy must find the source of its authority in the supreme sovereign, which is the state. The Constitution of this state confides the judicial power to no courts except those organized under the sanction and regulation of state law. This power cannot be delegated to cities, and such municipalities cannot confer any jurisdiction upon such courts in any class of cases. The People, etc., v. Curley, 5 Colo. 412. The court held in this case that the office of police judge for a city or incorporated town was within the

legislative authority, and while the election of such officer may be by law conferred upon the municipal authorities, yet such municipal authorities were without authority to provide for the exercise of judicial functions by such police judge in the absence of statutory authority conferring such power upon such municipality. Mr. Justice Stone, in delivering the opinion of the court, used this language:

"It thus appears to be clearly established that the administration of justice, the preservation of the public peace, and the protection of the rights of the citizen, although confided to local agencies, are essentially matters of public concern, while the enforcement of municipal by-laws and regulations, as above illustrated, are matters which pertain to the municipal corporation merely, as distinguished from the state at large."

See Dillon on Municipal Corporations, sections 33 and 34, 773.

Sections 46 and 46o, article 5, of the Constitution of this state impose an express limitation upon the power of the Legislature to pass any special or local law regulating the practice or jurisdiction of any of the courts of this state. It is quite obvious that under these sections of the Constitution the Legislature is prohibited from passing any local or special law conferring jurisdiction upon the district or superior court of Creek county to foreclose tax liens which may exist in the city of Sapulpa. By reason of this limitation upon the Legislature the practice or jurisdiction as prescribed by statute cannot be different in the courts of this state in any class of localities from what it is elsewhere in the state. This, for the reason the right to the redress of any wrong in the courts is a personal one unaffected by the place of residence. Ruan Street, 132 Pa. 257, 19 Atl. 219.

The district courts of this state are a part of the judicial system of the state, and the expense of maintaining these courts is a burden borne by taxpayers of the state, and the jurisdiction of these courts can only be granted or limited by the supreme sovereign power of the state. To hold otherwise and sustain the contention of counsel for the city of Sapulpa would in effect mean that municipalities operating under freeholders' charters are independent sovereignties within this state of equal dignity to that of the state, and that every one of such municipalities, which are numerous in this state, may confer power or jurisdiction upon the district courts of this state which had been withheld from such courts by the supreme sovereign power, and there-

by burden these courts with endless litigation to such an extent as to destroy them of their usefulness as instrumentalities for the people in common that bear the expense and burden of maintaining these tribunals. Unquestionably the supreme sovereign power of the state is interested in the power and jurisdiction of its courts.

The contention that cities operating under a freeholders' charter form of government have the power to determine what are purely municipal affairs, and once having determined through the municipal legislative body legislating within the authority granted by the municipal charter, such matter is binding upon the state, is untenable. The fallacy of this contention is obvious. It is a well-settled principle of law that there can be but one sovereign power in the government of a state. As said by Mr. Justice Timlin in State ex rel. Muller v. Thompson, 149 Wis. 488, 137 N. W. 20, 43 L. R. A. (N. S.) 339: "As well might we speak of two centers in a circle as two sovereign powers in a state." This is fundamentally contrary to our forms of institutions. Under our national and state organizations a municipal city government is only possible as an administrative agency of the state, having that measure of local self-government granted by the supreme sovereign power, and all local laws of such municipality must be consistent with our fundamental principle of government and always subject to the control of the state. State ex rel. Muller v. Thompson, supra.

Under our form of government there can be no absolute self-governing American cities, no matter how limited as to subject. To hold otherwise would be to attempt to establish the impossible, a sovereign within a sovereign. We fully concur in the pertinent language of Mr. Justice Timlin in the case of State ex rel. Muller v. Thompson, supra, wherein he said:

"Each citizen has, under the United States and the state Constitutions, a bill of rights for his protection. These may be infringed as well by local regulations as by state-wide regulation. The area in which the regulation is in force has nothing to do with this. Neither has the fact that the regulation relates to a city obligation or duty, rather than to a state obligation or duty. There can be no home rule which is worth considering without the power of taxation on the part of the city for city purposes, and there can be no taxation under our system without getting into the field of general law and constitutional rights. Neither can there be any taxation

not subject to regulation by the master hand of the state Legislature.

"Where sovereignty or even control is, by Constitution or statute, distributed between the state and the city with reference to the subjects of regulation by each, if the city were sovereign in all municipal affairs and the state in all other affairs, still the city could not conclusively determine what affairs are municipal, for to permit it to do so would be to confer upon the city an overlordship which would finally draw all power to the city. But in such case either one must have this power, and that one is the state. Under our American theory of the origin and office of Constitutions, the state may do this through its Legislature and judiciary. The former can create legal conditions, can make affairs municipal or state, as it deems wisest or most expedient."

See State ex rel. City of Seattle v. Carson, Comptroller (Wash.) 33 Pac. 428.

The great weight of adjudicated cases and text-writers support the rule that municipal corporations are bodies politic and corporate created by the Legislature as governmental agencies of the state and they can only exercise such power as they derive from their source of creation. The powers which they exercise at all times are subject to legislative control. The state has power to determine what matters are of general public concern.

Abbott on Municipal Corporations, vol. 1, section 22, in referring to municipal corporations, says:

"They are involuntary political or civil divisions of the state created by authority of law to aid in the administration of government. Whatever of power they possess, or whatever of duty they are required to perform, originates in the authority creating them. They are organized, mainly, for the interest, advantage, and convenience of the people residing within their territorial boundaries and the better to enable the government, the sovereign, to extend to them the protection to which they are entitled, and the more easily and beneficently to exercise over them its authority. The powers which they exercise in their public capacity are powers of the state, and the duties with which they are charged are duties of the state."

1 Hare, Constitutional Law, 628; State v. Missouri & K. Telephone Co. (Mo.) 88 S. W. 41; Straw v. Harris (Ore.) 103 Pac. Rep. 781; City of Columbus v. Union Pac. R. Co., 137 Fed. 869; Rogers v. Burlington, 70 U. S. (3 Wall.) 654, 18 L. Ed. 79; Tippecanoe County v. Lucas, 93 U. S. 108, 23 L. Ed. 822; Mather v. Ottawa, 114 Ill. 659; Cooley's Constitutional Limitations, page

203; Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197; Dillon on Municipal Corporations, sec. 237, p. 448 (5th Ed.); vol. 1, Glute's Modern Municipal Charters, sec. 22, pages 33 and 34.

Our state Constitution in authorizing cities of 2,000 or more inhabitants to adopt a charter form of municipal government in no way limited or abridged the supreme sovereign control over such municipality, but only guarantees to such municipality the right of municipal government subject to the Constitution and laws of the state. In the absence of such a constitutional provision the right to municipal government would not necessarily exist. This, for the reason no inherent right to municipal government exists, and no doubt the framers of the Constitution included section 3 A of article 18, supra, of the Constitution, in view of the well-established principle of law that municipal corporations are universally held to be the creatures of law and could exercise only such powers as are delegated to them. But by the provisions of section 3 A, supra, cities containing 2,000 or more inhabitants were guaranteed the right to municipal government, which right did not inherently exist.

The only reasonable construction of said section is that when such city adopts the freeholders' charter form of government, in the exercise of its power as a municipal government, the same must be consistent with the organic law of the state and subject to the supreme powers of the Legislature. If our conclusion be not correct, then we have the inevitable result that the framers of the Constitution authorized the establishment of independent petty states within this state. The language used in section 3 A, supra, is not subject to such a construction.

The various municipalities of this state that have adopted a charter cannot provide for the collection of municipal ad valorem taxes in a manner different from that provided by the general laws of the state. The plain language of section 20, art. 10, providing that the Legislature may confer upon the proper authorities of such municipalities the power to assess and collect taxes by general laws, interposes a prohibition against the Legislature levying taxes against such municipalities, but directs the Legislature to provide for their collection pursuant to and by authority of general laws.

The conclusion is inevitable that if such municipalities may adopt their own procedure for the assessment and collection of municipal taxes, then it must be held that the Constitution has authorized all such municipalities, by special law, to provide for the assessment and collection of such taxes, thereby authorizing as many different tax systems as we have municipalities operating under a charter form of government, which in effect would render section 20, article 10, of the Constitution, supra, providing that the Legislature by general laws may confer upon the proper authorities of such municipalities the power to assess and collect taxes, nugatory.

Whatever may be said commendatory of the right of self-government, nevertheless, such right must be exercised consistently with the Constitution and general laws of the state. See State ex rel. Webster v. Superior Court of King County et al. (Wash.) 120 Pac. 861.

This court in the case of Walton v. Donnelly, 83 Okla. 233, 201 Pac. 367, in the second paragraph of the syllabus, held:

"Such charter provisions do not supersede the general laws of the state of general concern, in which the state has a sovereign interest, and where the provisions of said charter conflict with the general laws of the state of this character, such laws will prevail."

See Thurston, County Treasurer, v. Caldwell et al., supra.

Under section 36, art. 5, supra, the authority of the Legislature in this state extends to all rightful subjects of legislation, and, as herein stated, the subject of taxation and the jurisdiction of the courts of this state are peculiarly rightful subjects of legislation belonging to the Legislature.

We, therefore, conclude that the subjects of taxation, the jurisdiction of the courts, and the regulation of the practice and procedure of the courts of this state are matters of general public concern in which the sovereign, the state, has an interest, and that these subjects are subject to control and regulation by the state by general laws.

The discussion heretofore indulged brings us, then, to the other question herein involved, namely, that of a municipal legislative body providing for the creation of a lien upon real property for special assessments and attempting to confer upon the district courts of the state the power to foreclose such liens in the absence of charter provisions authorizing such procedure. It is true, as stated in the case of Nitsche v. State Security Bank of Zanesville, Ohio, 69 Okla. 37, 170 Pac. 234, that the assess-

ment for local improvements is not a tax, but a debt, as authorized by section 7 of art. 10 of the Constitution, quoted supra. The syllabus of the Nitsche Case reads as follows:

"A municipal corporation having adopted a charter form of government, as provided by law, may, under section 7, art. 10, of the Oklahoma Constitution and the provisions of its charter and ordinance enacted in pursuance thereof, levy and collect assessments for street improvements, and fix the amount thereof as a lien on abutting property in proportion to the accruing benefits regularly ascertained, and may issue and deliver to the contractor in payment of his claim for making such improvements written evidence of the amount thereof, designated 'tax bills,' and the same may be made to bear interest at 7 per cent. per annum, and provide for the payment of a reasonable attorney's fee in case of legal proceedings to collect the same, and such certificate may be assigned and the lien which it evidences may be foreclosed by the assignee, and the property sold to satisfy the same."

It should be observed that this case expressly deals with a situation where the charter deals clearly with the creation of the lien. See, also, Berry v. McCormick, 91 Okla. 211, 217 Pac. 392. These cases have established the rule that municipalities may, by charter provisions, provide the procedure for street improvements and the manner of making assessments therefor, and the rule should not now be disturbed. In the instant case a different situation exists. The charter of the city of Sapulpa provides:

"The board of commissioners may, by ordinance, provide a system for the assessment, equalization, levy, and collection of all municipal taxes, not inconsistent with the provisions of this charter and of law, but, in no case, shall any tax levy, made by the commissioners, exceed the amount fixed by the Constitution of the state of Oklahoma. Until otherwise provided by ordinance, the annual assessment of all taxable property in the city of Sapulpa as finally fixed by the county and state assessing and equalization officers and boards shall be accepted as the assessment for the city of Sapulpa, and the same shall be the basis for the levying of taxes for city purposes; and, until otherwise provided by law, the collection of taxes for and on behalf of the city of Sapulpa and the certification and collection of all delinquent charges, assessments or taxes shall be in accordance with the laws of the state of Oklahoma."

Yet, with this charter provision that "the collection of all delinquent charges, assessments, or taxes shall be in accordance with the laws of the state of Oklahoma," the city commissioners attempted, by ordinance, to accomplish the result. approved by this

court in the Nitsche Case, wherein the charter for the authority for the lien.

In view of the discussion heretofore contained and the express provisions of the charter of the city of Sapulpa reqquiring the collection of assessments in accordance with the general laws of the state of Oklahoma, we must conclude that the city commissioners were without power to create the special method of enforcement of the tax lien, or to authorize the district court of the state to create and foreclose the lien by its decree in a manner not prescribed for that court by general law. We therefore conclude that the demurrer to the petition was rightfully sustained, and the judgment of the trial court is affirmed.

The opinion in this case reported in advance sheet of Pacific Reporter, November 26, 1923 (219 Pac. 117), was by order of the court withdrawn.

All the Justices concur, except LYDICK, J., not participating.