The Attorney General has considered your request for an opinion wherein you submit three questions concerning Op. Atty. Gen. No. 80-111 and the topic of deputy sheriffs. Due to the fact that your inquiries are directed at two distinct types of deputy sheriffs, a basic understanding of their differences is necessary before we proceed to set out and respond to your questions. Title 19 O.S. 162 [19-162] (1979) furnishes the starting point for questions concerning deputy sheriffs. In pertinent part, Section 19 O.S. 162 [19-162] provides: "Subject to the approval of the County Excise Board, every county officer shall appoint such regular and special deputies as are essential to the performance of the duties of his office in an efficient manner and shall fix their salaries and compensation." (Emphasis added) Over the years the distinction between regular and special deputies has remained relatively constant. As early as 1831 the New Jersey Supreme Court, in Allen v. Smith, 12 N. J. Law 159, 162-163 (1831), wrote: "There are two kinds of deputies of a sheriff well known in practice. 1st. A general deputy, or under sheriff, who by virtue of his appointment has authority to execute all the ordinary duties of the office of sheriff. (citation omitted) He executes process without special power from the sheriff, and may even delegate authority in the name of the sheriff for its execution to a special deputy. 2d. A special deputy, who is an officer pro hac vice for one particular occasion, to execute a particular writ on some certain occasion. He acts under a specific, not general appointment and authority." See 19 O.S. 541 [19-541] — 19 O.S. 542 [19-542] (1972) (now codified as 19 O.S. 162 [19-162] and 19 O.S. 180.65 [19-180.65] (1979)) and 19 O.S. 547 [19-547] (1979). See also Op. Atty. Gen. No. 75-265. As you are aware, Laws 1979, c. 221, 21 (emerg. eff. May 30, 1979), which amended 19 O.S. 545 [19-545] (1971), removed the authority of a sheriff to appoint a third category of deputy sheriffs commonly referred to as "non-salaried reserve force deputies." See Op. Atty. Gen. No. 80-111. Care should be taken so as to avoid confusion between special deputies (appointed pursuant to Section 547) and those persons who are recipients of special commission cards, in essence, honorary deputy courtesy cards, which confer no authority on the holder. See Allen v. State, 70 Okla. Crim. 143, 105 P.2d 450
(1940), and Op. Atty. Gen. No. 75-265. I. Your initial question pertains solely to special deputy sheriffs. You ask: "1. Pursuant to the current provisions of Oklahoma Statutes 1979, Title 19, Section 547, may the sheriff or undersheriff in writing depute certain persons properly trained as peace officers under Section 70 O.S. 3311 [70-3311](g) of Title 70, (such as reserve deputies, and members of volunteer organizations) to: "control traffic at public events, patrol with or without regular deputies, guard and transport prisoners, conduct surveillance and stakeout activities, dispatch and assist jailers; by radio or telephone having previously executed substantially the following printed or written form: DEPUTATION Date Time of County Sheriff/Undersheriff State of Oklahoma, hereby depute Reserve Officer/ Volunteer To (Particular Act) Sheriff/Undersheriff (Deputation and Assignment accepted by telephone/radio and affirmed on date set out above.)" The nucleus of your question consists of three general subject areas: eligibility; mode of appointment, and duties. Intertwined within your question, however, is a question of fact which we are unauthorized to answer. See 74 O.S. 18b [74-18b](e) (1979). Nonetheless, we will address the general areas in which you have expressed interest. Title 19 O.S. 547 [19-547] (1979) provides in part: "The Sheriff or the undersheriff may in writing depute certain persons to do particular acts." (Emphasis added) First, concerning mode of appointment, it appears that the basic concern of your first question revolves around the underscored portion of Section 547. The general rule of law is that statutes must be interpreted in a manner which renders every word operative. In re Supreme Court Adjudication of Sufficiency of Initiative Petition in Tulsa, 597 P.2d 1208 (Okla. 1979). Also, statutory construction notwithstanding, the majority view is that a written appointment is necessary, even in the absence of a statute requiring it, to authorize a special deputy to do a particular act. The written instrument or commission by which a deputy's authority is conferred is not an appointment. Rather, it is evidence of an appointment. No set form is necessary to make a commission valid. 67 C.J.S. Officers, 44. Along this line Title 19 O.S. 1971 548 [19-548] provides: "Every appointment of an undersheriff or a deputy sheriff, and every revocation of such appointments, shall be in writing, under the hand of the sheriff, and shall be filed in the office of the clerk of the county; but this section shall not extend to any person who may be deputized to do any particular act only." (Emphasis added) See also Smith v. State, supra; and Allen v. Smith, supra. Thus, the special deputization need not be filed in the papers of any cause or in the court, but it may be filed in the sheriff's office or given to the special deputy for his authority and protection. Nelson v. Nye, 43 Miss. 124
(1870). However, it should be observed that if the appointment is for the purpose of serving a summons, the special deputy's authority must be endorsed thereon. 12 O.S. 158 [12-158] (1972); Baxter v. Yeagley, 8 Kan. App. 657,56 P. 509 (1899). As to whether the sheriff or undersheriff can effect a Section 547 appointment by radio or telephone after having previously executed the sample form set out in your question, we again refer you to 19 O.S. 162 [19-162] (1979), which provides: "Subject to the approval of the County Excise Board, every county officer shall appoint such regular and special deputies . . . ." (Emphasis added) Section 162 was added by Laws 1979, c. 221, 2 (emerg. eff. May 30, 1979), the same legislation that amended 19 O.S. 545 [19-545] (1971) so as to remove the statutory authorization for "non-salaried reserve force deputies." See Op. Atty. Gen. No. 80-111. In addition, we refer you to 19 O.S. 180.65A [19-180.65A] (1979), which provides: "The officers named in groups "A" and "B" shall have such number of regular or technical deputies, assistants, investigators, evidence men, aides, stenographers or reporters, technicians, undersheriffs, jailers, matrons, handwriting and fingerprint experts, probation officers, and/or juvenile officers, bailiffs, or other help, whatever title the principal officer may ascribe to the duties or functions to be performed as authorized by law and clearly related to the proper accomplishment of lawful functions, whether on whole or part-time basis, at such rates of salary or pay, subject to the provisions of this section as hereinafter set forth, as the principal officer may propose and establish the need of and which the county excise board ma?l approve, for the adequate accomplishment of the functions of the office and the performance of the duties imposed thereon by law, with due weight being given to employment on whole or part-time basis; provided, that no such employments shall exceed the amount of lawful funds appropriated for such purpose." (Emphasis added) Laws 1979, c. 26, 1, 2 (emerg. eff. April 3, 1979), which amended 19 O.S. 180.65 [19-180.65] (1978), represents thethird amendment to the statute as codified in 1971. Under the 1971 statute, county sheriff s could hire such deputies at such rates of pay as the ". . . sheriff may propose and establish the need of and the county commissioners will approve." The 1976 Legislature deleted the foregoing phrase by amendment. See Op. Atty. Gen. No. 80-033; Op. Atty. Gen. No. 80-032; Op. Atty. Gen. No. 76-338. In 1979 the statute was again amended. The language of the 1971 statute was readopted with the exception that in place of the county commissioners as the reviewing body, the 1979 Legislature placed the review and approval power in the county excise board. In interpreting Section 162 and Section 19 O.S. 180.65A [19-180.65A], as amended in 1979, we are aided by the Oklahoma Supreme Court decision in Board of County Commissioners of McIntosh County v. Kirby, 174 Okla. 20,49 P.2d 746 747 (1935), which construed a statutory phrase closely analogous to the 1971 version of Section 180.65A. "That phrase does vest a discretion in the board, whereby it determines whether a nomination of an individual for appointment to the position of deputy court clerk shall be affirmed or rejected." This construction is supported by dicta in both Oklahoma Supreme Court and Court of Criminal Appeals decisions. See Cavin v. Board of County Commissioners of Garfield County, 168 Okla. 267, 33 P.2d 477,479 (1934); Correll v. Morgan, 70 Okla. 295,174 P. 509, 510 (1918); and State v. Smith, Okl.Cr., 320 P.2d 719,724 (1958); Murphy v. State, 95 Okla. Crim. 333,245 P.2d 741 (1952). This statutory requirement of approval does not take away from the sheriff the power of appointment. The appointment simply does not become effective unless consented to by the county excise board. 80 C.J.S. Sheriffs and Constables, 22. As a general rule, special deputies may perform any and all duties of the sheriff in the name of the sheriff, Gehrke v. Foreman,177 Ill. 618, 52 N.W. 852 (1899), subject, however, to the temporary nature of the appointment. The Oklahoma Court of Criminal Appeals has construed the Section 547 phrase "particular acts" to apply to situations "where the sheriff deputizes a person for one act or one incident only and upon completion of this act, his powers as a deputy terminates." (Emphasis added) Smith v. State, Okl.Cr., 510 P.2d 962, 964 (1973). See Op. Atty. Gen. No. 75-265 and Op. Atty. Gen. No. 73-217. Whether an appointment bestows a continuous grant of power beyond that authorized by Section 547, is a question of fact to be determined on a case-by-case basis. Regarding eligibility to be a special deputy, you ask whether a sheriff may depute properly trained peace officers, such as former Section 545 reserve deputies, to do particular acts. Your question is answered in the affirmative. II. You next ask: "2. Would the effect of Opinion No. 80-111 that the sheriff has no authority to appoint non-salaried deputy sheriffs be modified or changed if the sheriff under the provisions of Oklahoma Statutes 1979, Title 19, Section 180.65, appoints or hires, with the approval of the county excise board, such reserve officers or volunteers as enumerated in paragraph A, including "or other help" on a whole or part-time basis and on a salary basis as little as one dollar a year?" In Op. Atty. Gen. No. 80-111, this office dealt only with the power of a county sheriff to appoint reserve deputies. It was not within the thrust of that opinion to determine the number of deputies which may be appointed or the amount of compensation to be paid them. Since the authority for the appointment of 19 O.S. 545 [19-545] (1971) reserve deputies has been removed by legislative amendment (Laws 1979, c. 221, 21), we interpret your second question to inquire as to whether a regular deputy (permanent though not necessarily full-time, yet subject to the requirements of 70 O.S. 3311 [70-3311](f) (1977)) can be paid a minuscule salary. In Op. Atty. Gen. No. 76-182 we stated: "As to the sheriff's regular salaried deputies, his power to appoint flows from both Sections 541 and 542 and from Section 180.65. The inescapable conclusion is that Sections 541 and 542 now 19 O.S.Supp. 1979, 162, 541 remain effective to the extent that they give the sheriff the power to appoint deputies and insofar as they direct payment of certain fees into the general fund of the county. Sections 541 and 542 have been superseded insofar as they relate to the number of regular deputies the sheriff may appoint and the salaries and wages to be paid deputies and other personnel of the County Sheriff." The number of regular deputies and their compensation must be determined by reference to the "Comprehensive County Officers Salary Act," codified as 19 O.S. 180.58 [19-180.58] — 19 O.S. 180.69 [19-180.69] (1971). Interpreting 19 O.S. 180.65 [19-180.65] (1976), this office, in Op. Atty. Gen. No. 76-338, opined: "Each county officer has the authority to designate the number of deputies under his supervision and control and to fix their rates of compensation within statutory perimeters. The only limitations upon county officers are that they may not exceed the amount of lawful funds appropriated for employment purposes nor may they make salary commitments beyond the amount of funding provided by the excise board." Note, though, that Section 180.65 has since twice been amended. Therefore, Op. Atty. Gen. No. 76-338 is expressly modified to the extent that it is in conflict with 19 O.S. 180.65 [19-180.65] (1979). Our most recent pronouncement interpreting Section 19 O.S. 180.65 [19-180.65] is Op. Atty. Gen. No. 80-032. Therein it was noted that subsection "D" provides that a deputy's salary "shall be determined by the sheriff and the county excise board based on responsibility, risks, skills, training, and experience required for such position and afforded by the subordinate . . . ." The word "shall" is usually given its common meaning of "must." State v. Hunt, 286 P.2d 1088
(Okla. 1955). Though the "Comprehensive County Officers Salary Act" sets a maximum ceiling without a statutory minimum on the salaries of deputies, those salaries nevertheless must be based on the criteria set out in 19 O.S. 180.65D [19-180.65D] (1979). III. In your third question, you inquire further concerning minimum salaries: "3. Would the dollar-a-year, part-time salary paid under the said provisions be in violation of the state or federal minimum wage acts?" The United States Supreme Court, in National League of Cities v. User,426 U.S. 833, 49 L.Ed.2d 245, 96 S.Ct. 2465 (1976), held that the 1974 amendments to the Fair Labor Standards Act (29 U.S.C. § 201, et seq.), which purported to extend the Act's minimum wage and hour provisions to almost all employees of the states and their political subdivisions, was violative of U.S. Const., Art. 1, 8, cl. 3 and U.S. Const., amend. 14, 5. Court Fund of Tulsa County v. Cook,557 P.2d 875 (Okla. 1976). In Amersbach v. City of Cleveland, 598 F.2d 1033 (6th Cir. 1979), the court interpreted National League of Cities as having created an affirmative defense against compliance with congressional enactments or regulations which intrude into protected areas of state sovereignty, such as fire prevention and police protection. Thus, the Fair Labor Standards Act does not apply to deputy sheriffs. Section 40 O.S. 197.2 [40-197.2] of the "Oklahoma Minimum Wage Act" (codified as 40 O.S. 197.1 [40-197.1] (1971), et seq.) provides in part: "No employer within the State of Oklahoma shall pay any employee a wage of less than Two Dollars ($2.00) $3.10, effective Oct. 1, 1980 per hour on or after the effective date of this act." In Op. Atty. Gen. No. 68-115 this office noted that the minimum wage requirements of Section 40 O.S. 197.2 [40-197.2] did apply to members of municipal fire departments. Therein, Section 40 O.S. 197.4 [40-197.4](d), which defines "employer" as: ". . . any individual, partnership, association, corporation, business trust, or any person or group of persons hiring more than ten full-time employees . . .," was interpreted to include municipal corporations. Quoting City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640, 35 A.L.R. 872 (1924), this office noted "that municipal corporations are bodies politic and corporate created by the legislatures as governmental agencies of the State." Article XVII, Section 1 of the Oklahoma Constitution also defines counties as "bodies politic and corporate." Therefore, the "Oklahoma Minimum Wage Act" is likewise applicable to counties. Title 40 O.S. 197.4 [40-197.4](e) (1978) defines "employee" covered by the Act as any individual employed by an employer except as specifically exempted. Section 40 O.S. 197.4 [40-197.4](e) lists some eleven exemptions including: "(9) Any person employed as part-time employee not on permanent status. A part-time employee is defined as an employee who is employed less than twenty-five (25) hours a week." We are not unmindful of 19 O.S. 180.67 [19-180.67] (1971), which expresses the intent of the Legislature that the "Comprehensive County Officers Salary Act" by the comprehensive salary code for all counties. We view that Act, however, as providing for a limitation on maximum expenditures, not minimum salaries. See Op. Atty. Gen. No. 76-338. Nor are we unmindful of 40 O.S. 197.11 [40-197.11] (1978), which provides in part: "The Commissioner, to the extent necessary in order to prevent curtailment of opportunities for employment, shall by regulations provide for: * * * "(c) any individual employed by any state, county, city, town, municipal corporation or quasi-municipal corporation, political subdivision, or any instrumentality thereof ;" We note, though, that no regulations have been adopted pursuant to Section 197.11. Labor Laws of the State of Oklahoma (FY-80 Edition). Accordingly, only special deputies (they being temporary, not permanent appointees) who are employed less than 25 hours a week are without the ambit of the "Oklahoma Minimum Wage Act." Therefore, it is the official opinion of the Attorney General that your questions be answered as follows: (1) special deputies who are officers pro hac vice appointed under a specific, and not general, authority may be deputed to do a particular act; (2) the deputization of persons to do "particular acts" applies to situations where the sheriff deputizes a person for one act or one incident only, and upon completion of this act the person's powers as a deputy sheriff terminates; (3) a written appointment is necessary to authorize a special deputy to do a particular act even though the appointment need not be filed in the office of the county clerk; (4) the appointment by the sheriff of a deputy, regular or special, does not become effective until approved by the county excise board; and (5) the compensation of deputies, both regular and special, is governed by both the "Comprehensive County Officers Salary Act" and the Oklahoma Minimum Wage Act." (Timothy S. Frets, Stephen F. Shanbour)