## BAUGHMAN v. WEICKER.

No. 20020.   Opinion Filed March 26, 1929.

P. E. Gumm, Jasper Roberts, and Adelbert Brown, for plaintiff in error.

Allen & Jarman, M. W. McKenzie, and A. L. Hull, for defendant in error.

CULLISON, J.   Plaintiff in error was plaintiff in the trial court; defendant in error was defendant in the trial court, and they will be referred to herein as they appeared below.

Plaintiff for his cause of action against the defendant in his petition filed in the court below, says:

"(1)   That during the times hereinafter mentioned, the city of Oklahoma City was, and ever since has continued to be, and still is, a municipal corporation of the state of Oklahoma, and a body corporate by the name of the city of Oklahoma City, and was duly incorporated under the laws of this state applying to cities of the first class, and since the year 1913, said city has been operating under a charter form of government duly and legally adopted by the freeholders of said city as provided by the laws and Constitution of this state.

"(2)   That under and by virtue of the provisions of the charter and amended charter thereof, several offices are created, and methods and means of filling the same are provided; that among such offices is that of two councilmen from the second ward of said city, which officers are elected at large by a vote of the qualified electors of the entire city, although nominated from the ward alone; that by and under the provisions of the charter and amended charter an election for the offices of councilmen, among other offices of said corporation, was held in said city on the 5th day of April, 1927, and such election was then held for the purpose of electing some person to fill the said office of councilman of said city from ward 2 for a term of two years commencing on the 12th day of April, 1927, and which office such person so elected would

have the right to hold during the term for which he was elected.

"(3) That at said election, the plaintiff was duly and legally elected as councilman from ward 2 of said city for the term of two years, as provided for in said charter and amended charter, to commence on the day and year aforesaid, and the plaintiff did, on the 12th day of April, 1927, accept said office, qualified according to law, and entered upon the discharge of his duties as such officer as hereinafter set forth, and is now and ever since the 12th day of April, 1927, has been the duly elected and qualified councilman from ward 2 of said city.

"(4) Plaintiff further states that he has been a resident of ward 2 of said city for more than five years, and that he at all times mentioned herein has maintained a home in said ward; that, on or about the 28th day of August, 1928, he temporarily changed his place of abode from ward 2 to ward 1 of said city, with the intention of moving back to ward 2 within the year, in which ward, plaintiff claims and has at all times claimed his legal residence, although temporarily removed therefrom; that on or about the 13th day of September, 1928, the other members of the city council, acting as said city council, did, without right or authority of law, attempt to declare that a vacancy existed in said office of this plaintiff, and did unlawfully and illegally refuse and still refuse to further recognize plaintiff as a councilman and officer of said city and have refused to permit him to perform the duties of his office, although the plaintiff is the duly elected and qualified holder of said office and is and has at all times been ready, willing and able to perform the duties thereof. * * *

"(5) Plaintiff states that on or about the 3rd day of October, 1928, said other members of said council, acting as said council, did, without right or authority of law, elect the defendant to fill the office of which the plaintiff is the due and legal holder, and said defendant did on the 9th day of October, 1928, attempt to qualify for said office and has un'awfully intruded into and assumed to be such officer and perform the duties thereof; that the said defendant has no legal right to hold said office or to perform the duties in connection therewith. and is keeping this plaintiff out of his said office and is a usurper of the same."

Defendant for his answer to plaintiff's petition says:

"(1) That plaintiff has no legal capacity to sue.

"(2) That the petition fails to state facts sufficient to constitute a cause of action in favor of the plaintiff and against this defendant.

"(3) Defendant denies generally and specially each, every and all the material allegations in said petition contained except those hereinafter admitted.

"(4) Defendant admits that the city of Oklahoma City was at all times mentioned in the petition, and still is, a municipal corporation, existing under the laws of the state of Oklahoma, and that a charter was adopted in the year 1913 for the government of said municipality. That said charter was thereafter, and on or about the 2nd day of November, 1926, by vote of the people of said city, duly and legally amended; and that the Governor of Oklahoma thereafter approved said amendments, and said amendments were and are in full force and effect since prior to the 1st day of April, 1927.

"(5) That on the 3rd day of October, 1928, by the unanimous vote of seven members of the council of Oklahoma City, this defendant was elected to the office of councilman from ward No. 2 for the term expiring in April, 1929, and on the 9th day of October, 1928, this defendant qualified and subscribed to the oath of office and entered upon and has been performing the duties of councilman from said ward since said date."

Plaintiff in his reply to defendant's answer further says:

"That the defendant was not legally elected to the office of councilman as claimed in the fifth paragraph of his answer, but that the said seven members of the council of Oklahoma City attempted without legal right, power or authority of law to make or hold said election as set forth in plaintiff's petition and to which reference is hereby made and that this plaintiff is the duly and legally elected, qualified person entitled to said office and is being wrongfully kept out of the same and from performing the duties thereof by said defendant, all as set forth in said petition. * * *"

On the 23rd day of November, 1928, the trial court rendered judgment in favor of the defendant as follows, to wit:

"It is therefore ordered, adjudged and decreed that the demurrer to the evidence be sustained and the petition of the plaintiff be dismissed, and that judgment be and the same hereby is rendered for the defendant in this action, to which action of the court, the plaintiff excepted, and an exception was allowed; and thereupon, motion for new trial having been filed and considered on the same day by the court, it is ordered that the motion for new trial be and the same is hereby overruled. to which action of the court, the plaintiff excepted and gave notice of his intention to appeal to the Supreme Court, and it is thereupon ordered that the clerk be directed to note the notice of appeal as provided by law on the trial docket and the plaintiff is allowed the statutory period

of 15 days from this date in which to make and serve case-made, the defendant to have three days in which to suggest amendments, the same to be settled upon three days' notice to the opposite party."

Plaintiff comes to this court on appeal and assigns errors on the part of the trial court as follows, to wit:

"Assignment of Errors.

"(1) Said court erred in sustaining the demurrer of defendant to evidence of the plaintiff.

"(2) Said judgment is contrary to the law and the evidence.

"(3) Said court erred in overruling the motion of plaintiff for a new trial."

Plaintiff says: "We will discuss these assignments in order named, although the decision of the court on one will perhaps be decisive of the others."

We hardly agree with the attorneys for plaintiff that the decision of the court "on one will be decisive of the others." Adjudication of the second assignment will be sufficient.

Second Assignment.

"Said judgment is contrary to the law and the evidence."

Plaintiff suggests two propositions for consideration:

First Proposition.

"What law governs herein? The general law of the state covering cities of the first class or the charter of Oklahoma City?"

Second Proposition.

"If the general law, then we admit the office of the plaintiff became vacant when he moved from ward 2. But if the charter provisions prevail we claim he would have to move from the city before the council could declare a vacancy to exist as the charter, by special provision, section 4, art. II, amended charter, so provides."

Having carefully read the argument of council for plaintiff and the law cited by him in support of his contentions, the court feels in duty bound to attempt at least a more thorough analysis or adjudication of the question involved than the case really demands.

This plaintiff and defendant are both resident citizens of a municipal corporation known as Oklahoma City, Okla. Plaintiff was elected to, and on the 12th day of April, 1927, became a member of, the city council of said city, and served until September 13, 1928. The record shows he was a resident of ward 2 when elected, but sometime after his election he, the plaintiff, moved out of ward 2 into ward 1 of said city; that he had been living in ward 1 about one and one-half months when this suit was commenced.

It is agreed by plaintiff and defendant that the record in this case shows that the plaintiff in April, 1927, was duly elected councilman from ward 2, Oklahoma City; that soon thereafter he took the oath of office and became an active member of the council; that on August 13, 1928, plaintiff moved from ward 2 into ward 1; that on the 13th day of September, 1928, the office of plaintiff was by the city council of said city declared vacant.

The real question in this case is:

Can a councilman who resides in and was nominated and elected from a particular ward, as provided by the Oklahoma City charter, after his election and qualification, move from the ward in which he was nominated and elected to another ward of the city and continue to participate as a member of the council of said city, or has he, under the provisions of section 4513, C. O. S. 1921, by said act of removing from the ward in which he was nominated and elected to another ward, forfeited his office?

Section 4513, C. O. S. 1921, provides:

"Who Eligible to Office—Oath—Bond. All officers elected or appointed shall be qualified electors of the city, and all councilmen and members of the school board shall be actual residents of the ward for which they may be elected; and the removal of any officer from the city, or of any councilman or member of the school board from the ward for which he shall be elected, shall cause a vacancy in said office. Vacancies in office, provided for herein, shall be filled by appointment by the council. The council shall require all city officers, elected or appointed, to take and subscribe an oath of office, and to give bonds for the faithful discharge of their duties."

Article 2, section 4, of the city charter of Oklahoma City provides:

"Whenever any person elected to fill the office of mayor, or elected or appointed to the council, neglects or refuses to qualify, * * * or removes from the city , * * * the council shall declare that a vacancy exists and proceed to elect a successor to such councilman-elect or councilman as in the manner provided for in section 3." .

Plaintiff contends that under this charter of Oklahoma City he is not required to continue to live in the ward in which he resided at the time of his nomination and

election, but that under the city charter he may live in any ward of the city and continue to fill the office of councilman; and that the action of the city council declaring his office vacant and denying 'him th'e privilege of participating as city councilman in the affairs of said city is null and void.

Article 10, section 1, of the charter of Oklahoma City provides:

"On the third Tuesday in March after this amendment shall have been adopted and on the third Tuesday of March of each odd numbered year thereafter, there shall be held in the city of Oklahoma City, Okla., a primary election for the nomination of candidates for the offices of mayor and councilmen from each ward, candidates for mayor to be nominated at large and candidates for councilmen to be nominated by the qualified 'electors of their respective wards of which wards said candidates must be residents. * * * And in all subsequent elections, the two candidates from each ward, or one, if only one is running, receiving the highest number of votes, shall be declared the nominee from their respective wards. * * *"

Section 4 reads as follows:

"* * * In said primary election and in said special election for the election of mayor and councilmen, and in the general election and canvass of returns and all other proceedings whatever relating to said election either primary, special or general, the general laws of this state applicable to municipal elections and primaries are hereby adopted and put into full force and effect."

Article 2, section 1:

"The legislative branch of the city government shall consist of a city council composed of two councilmen from each ward and a mayor. Members of the council and the mayor shall be chosen by the electors of the city at the general elections."

Section 2—Terms of Office:

"* * * At the first election after the adoption of this amendment two councilmen shall be chosen from each ward."

Section 3—Vacancies:

"'Whenever a vacancy occurs in the council by reason of death, resignation, incapacity, or removal of a member, the council shall elect by a majority vote an eligible person from the ward from which the vacancy occurs to fi'l such vacancy until the next general municipal election. * * *"

Council for plaintiff also cite article 10. section 3, of the city charter of Ok'ahoma City:

"Section 3. After the nominations at said primary 'election. all candidates 'shall be

voted on at large by the qualified electors of the whole city."

We think| the above and foregoing charter provision, namely, section 3, article 10, has no application to the real question involved in the instant case.

Article 12 of the charter of Oklahoma City, as amended, reads as follows:

"After the first election of councilmen and before the next general election of city officers, the city of Oklahoma City, by its city council, shall redistrict the city into four or more wards, districting the wards as nearly equal as practical as to area and population, the wards so created and districted to be as nearly uniform as practical, and provide for the election of councilmen in the wards so redistricted as provided by this charter.***"

Section 3, article 10, of the charter of Oklahoma City, above, simply provides that the candidates for the various municipal offices of said city shall be voted on at large by the electors of the entire city. This provision of the charter is clearly in accord with the laws of this state which provide for the nomination of officers by districts and election by the whole people of the state, and has been held to be constitutionally sound, and when applied to cities is analogous to the state law. Munroe v. McNeil, 122 Okla. 297, 255 Pac. 155.

Plaintiff also contends that, "It is the well-recognized law of this state that in matters of purely municipal concern the charter of a city, adopted pursuant to the Constitution, article 18, sec. 3a, prevails over any general law of the state in conflict therewith," and, therefore, would have this court hold that the powers and duties of a city council are of "purely municipal concern."

Keeping in mind the argument of plaintiff's attorney, his views of the law, and the agreed statement of facts set out above by the court, it is very apparent that a thorough discussion and adjudication of some of the functions, powers, and duties of a municipality generally recognized by the courts as essential and binding upon a municipality such as Oklahoma City, operating under a charter form of government, should be mentioned.

Oklahoma City, under and by virtue of the laws of the state, is a municipal corporation:

"A municipal corporation is a legal institution formed by charter from sovereign power, erecting a populous community of

prescribed area into a body politic and corporate with corporate name and continuous succession and for the purpose and with the authority of subordinate self-government and improvement and local administration of affairs of state." 43 C. J. 65.

Taking the above definition as our guide, a municipal corporation, or municipality, is:

"(1) A district legally created from a designated part of the state and organized to promote the convenience of the public at large." 43 C. J. 65, note.

"(2) An agency of the state to discharge some of the functions of government." 43 C. J. 65.

"(3) A body corporate consisting of the inhabitants of a designated area, created by the Legislature." 43 C. J. 65.

"(4) A governmental institution, designed to create a local government over a limited territory." 43 C. J. 65.

"(5) An incorporation of persons, inhabitants of a particular place, or connected with a particular district, enabling them to conduct its local civil government." 43 C. J. 65,

"(6) An investing the people of the place with the local government thereof." 43 C. J. 65.

We think a close analysis of the authorities cited above with reference to the origin, nature, character, powers, and functions of municipalities, operating under a charter form of government, hold that municipalities possess both state and municipal powers; governmental and municipal.

"As Governmental or Municipal—In General:

"While in a general sense the functions of municipal corporations are all of a public nature, it is well recognized and generally established that a municipal corporation acts in, or possesses, a dual capacity, or double character, or dual character, a twofold character, exercising correspondingly twofold functions, two classes of powers, two classes of rights, and two kinds of duties. In one of these dual capacities, considered as an agency of the state, the corporation exercises functions and powers, possesses rights and has impressed upon it duties variously designated as public, legislative, political, or governmental; and acting in this capacity a municipality acts as a sovereignty. In the other of these dual capacities, not considered as an agency of the state, the municipal corporation exercises functions and powers designated as private, quasi-private, proprietary, merely municipal, and of municipal concern." 43 C. J. 179.

"The state confers certain powers upon the municipality so that its offices may assist in promoting the public welfare generally." 28 Cyc. 267.

"It is also a general rule that a municipal corporation can exercise no power which is repugnant to the common or statute law of the state." 28 Cyc. 272.

"Mode of Exercising Power:

"As the statute conferring a municipal power prescribes the manner in which it shall be exercised, this is generally mandatory and exclusive of other methods so that any attempt to exercise it in a different manner will be void, and this rule is especially applicable where there are negative words in effect prohibiting the doing of a thing unless it is done in the manner prescribed. But the mode of exercising the power chosen by a corporation must be reasonable and customary; otherwise it may be enjoined." 28 Cyc. 275.

"The rule is generally applied to such municipal functions as are regarded as mandatory. The trust must be faithfully performed for the benefit of the public and any attempt to barter or surrender it is unauthorized and void." 28 Cyc. 275.

"In Its Government Aspects:

"The municipality, being recognized as an appropriate instrumentality for the administration of general laws of the state within its boundaries and appointed and empowered for that purpose, thereby becomes an agent of the state for local administration and enforcement of its sovereign power." 28 Cyc. 124.

The power conferred upon a municipality to elect officers to fill the various offices of the city and to determine their qualifications is purely a general power of the state, and the exercise of such power by a city operating under a grant of charter power, from the state, shall not be inconsistent or in conflict with the state law.

"The favorite American doctrine of home rule finds expression and illustration in the provision found in nearly all municipal charters that the corporation shall choose the municipal officers, provided for by the charter for the execution of the municipal powers. * * * In other jurisdictions this doctrine as to the right of local self-government free from legislative control is not recognized, but it is held or assumed that the Legislature has the power to appoint or provide for the appointment of, and to control all municipal officers, whether their offices are governmental or purely municipal, except in so far as such power is limited by express constitutional provisions. It is perhaps agreed that if the functions of the office are governmental rather than municipal, if they concern the general public more than the local community, although confined to the municipal limits, the officers

are state officers and as completely under the control of the Legislature as are the general officers of the state." 28 Cyc. 291-295.

It has been held that, among the qualifications most generally required of a councilman or public officer, are citizenship, qualified electors, and residence. 46 C. J. 936.

Legal residence is defined as "the place of a man's fixed habitation where the political rights are to be exercised and where he is liable to taxation" "Legal residence," "inhabitancy" and "domicile" mean the same thing. Crawford v. Wilson, 4 Barb. 504.

Where it clearly appears that the Legislature, lawmaking body, or municipality, has declared what qualifications should be possessed by an officer, and where it further appears that among such qualifications is that of residence in the ward from which the officer is nominated and elected, removal from the ward after election and ceasing to possess the prescribed qualifications will be treated as an abandonment or implied resignation of the office.

"Where it appears that the Legislature or lawmaking body of a state or municipality have declared the qualifications that should be possessed by an officer, such a requirement, however, when imposed, is mandatory and its validity has been upheld. Further, it has been held that residence for a specific time may be required as a qualification. The question of what is residence is one of law to be determined by the consideration of the intention and overt acts of the person whose acts are being examined." 46 C. J. 938.

"Statutes imposing qualifications should receive a liberal construction in favor of the right of the people to exercise freedom of choice in the selection of officers. * * * " 46 C. J. 937.

"Under some laws as judicially construed, ceasing to possess the legal qualifications works a forfeiture of the office. * * * Where aldermen or councilmen are required to be residents of wards or subdivisions of the city, they thereby forfeit their office; that is, ordinarily such a removal will be treated as an abandonment or implied resignation of the office." People v. Ballhorn, 100 Ill. App. 571.

"The removal of a councilman from the ward for which he was elected shall create a vacancy in such office," was construed to mean that the act of removal of itself creates the vacancy. In such case there is no necessity for an adjudication of the vacancy. State v. Otis, 131 Wash. 455, 230 Pac. 414.

An officer who ceases to possess the required qualifications imposed by the statute or charter and who has by reason of his failure to qualify been removed from office, cannot be heard to complain, since he has no vested right to such office:

"An office is not property within the meaning of the constitutional guarantee of due process of law, nor has an incumbent a vested right therein. One may be deprived of his office without the sovereign being required to compensate him for his loss. * * *" 46 C. J. 936.

Counsel for plaintiff on page 24 of his brief says:

"Article 2, section 4, is the particular part of the charter which we claim governs in this case. After enumerating other causes which direct the council to declare a vacancy to exist, this section in effect says: 'When a councilman removes from the city, the council shall declare a vacancy to exist and elect his successor.'"

This court cannot agree with the construction placed on article 2, section 4, by plaintiff's counsel.

Article 2, section 4, of the charter provides:

"When any person elected to fill the office of mayor or elected or appointed to the council neglects or refuses to qualify * * * or removes from the city, the council shall declare that a vacancy exists and proceed to elect a successor to such councilman-elect or councilman as in the manner provided for in section 3."

It will be observed that the above provision of the Oklahoma City charter refers especially to "officers removing from the city," but cannot be construed as applying to that part of section 4513, C. O. S. 1921, which provides that:

"All councilmen and members of the school board shall be actual residents of the ward for which they may be elected * * * and the removal of any councilman or member of the school board from the ward for which he shall be elected, shall cause a vacancy in said office. * * * Vacancies in office provided for herein shall be filled by appointent by the council. * * *"

Article 2, section 4, is a general provision of the Oklahoma City charter relating solely to the removing of officers from the city after their election, but does not cover that provision of section 4513, C. O. S. 1921, which provides that "all councilmen shall be actual residents of the ward for which they may be elected. * * *" The above charter provision declares that when an officer removes from the city his office shall be declared vacant. This is a wise provision of

the charter, and is in exact accord with section 4513, C. O. S. 1921. If the charter did not contain the above provision, the state law would and does control.

Article 2, section 3, provides:

"* * * Whenever a vacancy occurs in the council by reason of death, resignation, incapacity, or removal of a member, the council shall elect by a majority vote an eligible person from the ward from which the vacancy occurs to fill such vacancy until the next general municipal election."

The above provision of the city charter seems somewhat ambiguous, that is, it does not clearly provide that when a councilman moves from the ward in which he was nominated and elected to another ward his office shall become vacant. It is a well-established rule of law that a city charter is construed or interpreted according to the same rules governing the construction of Constitutions and statute, and if possible the courts should arrive at the legislative intent, where this can be done from the instrument or the statute itself.

"The intention and meaning of the legislature must primarily be determined from the language of the statute itself, and not from conjectures aliunde. * * * This principle is to be adhered to notwithstanding the fact that the court may be convinced by extraneous circumstances that the Legislature intended to enact something different from that which it did enact. * * * No motive, purpose or intent can be imputed to the Legislature in the enactment of a law other than such as are apparent upon the face and to be gathered from the terms of the law itself." 25 R. C. L. 961.

"If possible, a statute should be so construed as to render it a consistent and harmonious whole: if different portions seem to conflict, they should, if practicable, be harmonized, that construction being favored which will render every word operative rather than one which makes some words idle and nugatory." 25 R. C. L. 1008.

"But while the courts cannot add to, take from, or change the language of the statute to give effect to any supposed intention of the Legislature, words and phrases may be altered and supplied when that is necessary to obviate repugnancy and inconsistency and to give effect to the manifest intention of the Legislature." 25 R. C. L. 975.

Again referring to article 2, section 3, which provides:

"* * * Whenever a vacancy occurs in the council by reason of death, resignation, incapacity, or removal of a member, the council shall elect by majority vote an eligible person from the ward from which the va-

cancy occurs to fill such vacancy until the next general municipal election."

And, article 10, section 1, of the charter of Oklahoma City, providing for the election of the mayor and council as follows:

"* * * There shall be held in the city of Oklahoma City, Okla., a primary election for the nomination of candidates for the offices of mayor and councilmen from each ward, candidates for mayor to be nominated at large and candidates for councilmen to be nominated by the qualified electors of their respective wards, of which ward said candidates must be residents. * * *"

Under provisions such as embodied in article 2, section 3, and article 10, section 1, above, it has been held:

"Where an incumbent of a public office, who to be qualified must reside in a particular district, moves out of the district with the intention of remaining permanently outside it, the office which he holds is regarded as vacant. * * * " 46 C. J. 972.

"Where acts or events have rendered an office vacant, the authority having power to fill the vacancy may treat it as vacant and proceed to appoint or elect another to fill it. * * *" 46 C. J. 974.

In construing the charter provisions in question, we will be guided by the following rule:

"It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every section, clause, word or part of the act." 25 R. C. L. 1004.

"Obviously, in order that effect may be given to every part of an act in accordance with the Legislative intent, all the language of the act must be considered, and brought into accord. It is not safe to base a construction upon a particular word or phrase, for the language of legislative enactments is not always precise and accurate, and, besides, one portion may frequently be designed to extend, qualify or limit another, that the meaning of one portion of a statute may depend upon the effect of another. Hence, it is an established rule in the exposition of statutes that the intention of the lawgiver is to be deduced from a view of the whole, and of every part of a statute taken and compared together." 25 R. C. L. 1007, (Numerous authorities cited thereunder).

Keeping in mind the cardinal rules of construction of statutes, which, of course, are applicable to the construction of city charters, it becomes necessary to harmonize if possible some of the provisions of the city charter involved in this case.

Article 10, section 1, provides:

" * * * Candidates for councilmen to be nominated by the qualified electors of their respective wards, of which wards said candidates must be residents."

Article 2, section 3, provides.

" * * * Whenever a vacancy occurs in the council by reason of death, resignation, incapacity, or removal of a member, the council shall elect by a majority vote an eligible person from the ward in which the vacancy occurs to fill such vacancy."

Section 4513, C. O. S. 1921, provides:

"Who Eligible to Office—Oath—Bond. All officers elected or appointed shall be qualified electors of the city, and all councilmen and members of the school board shall be actual residents of the ward for which they may be elected; and the removal of any officer from the city, or of any councilman or member of the school board from the ward for which he shall be elected, shall cause a vacancy in said office. Vacancies in office, provided for herein, shall be filled by appointment by the council. The council shall require all city officers, elected or appointed, to take and subscribe an oath of office, and to give bonds for the faithful discharge of their duties."

Taking into consideration the statutory provision cited above, the court is of the opinion, in order to give proper effect to those provisions of the city charter above mentioned and the laws of the state from which the municipality derives its power, it would be a reasonable construction to say that it was the legislative intent of the framers of the charter that a city councilman after his nomination and election should reside in the ward from which he was elected, and if he removes therefrom into some other ward, his office shall become vacant, and it would be the duty of the city council to declare a vacancy and appoint some eligible person to fill the same.

Article 2, section 4, of the charter provides that if the officer removes from the city his office shall become vacant. While article 10, section 1, and article 2, section 3, when taken together, by implication provide that when a city councilman removes from the ward in which he is nominated and elected his office shall become vacant.

The court is further of the opinion that article 2, section 4, is a general provision of the Oklahoma City charter, and not special or controlling in this case, as contended by council for plaintiff.

This court is of the opinion that sound public policy requires that a city councilman, as in the instant case, be and remain an actual resident from the ward which he represents. As was said by the learned court in the case of People v. Ballhorn, 100 Ill. App. 571:

"Sound public policy requires that those who represent the local units of government shall themselves be component parts of such units. The purpose of these statutes is to effectuate this wise policy. And this purpose can only be truly served by requiring such representatives to be and remain actual residents of the units which they represent, in contradistinction from constructive residents. A mere constructive resident has no better opportunities for knowing the wants and rightful demands of his constituents than a nonresident, and is as much beyond the wholesome influence of direct contact with them. The language of these statutes is susceptible of the meaning which requires that the alderman shall be and remain an actual resident of the ward for which he is elected, and such meaning more truly serves the purpose of the statute, and is in no sense repugnant to the context."

Counsel for plaintiff and defendant having stipulated as to the important facts in the case and the case having been tried to the court without a jury, we deem it unnecessary to review any of the testimony. The trial court sustained defendant's demurrer to the evidence; dismissed plaintiff's petition and rendered judgment for the defendant. Finding no error on the part of the court, the action of the trial court is affirmed.

LESTER, V. C. J., and HUNT, HEFNER, SWINDALL, and ANDREWS, JJ., concur.

MASON, C. J., and CLARK and RILEY, JJ., not participating.