STATE PROPERTY — MUNICIPAL REGULATION In the absence of a specific grant of authority by the Legislature to the municipalities to regulate the State's property, the State retains the right to have its property free from municipal regulation. This principle applies to the Oklahoma Capitol Improvement Authority and to all State agencies. The State of Oklahoma has not granted to municipalities the authority to regulate the State's property. Therefore, the Capitol Improvement Authority may construct the State office building in the City of Tulsa without obtaining a building permit or otherwise complying with that city's building codes and regulations. The Attorney General is in receipt of your recent letter wherein you ask essentially the following question: "1. Can the City of Tulsa apply its building codes and regulations to the construction and maintenance of a state building, constructed under the supervision of the Capitol Improvement Authority?" Resolution of this question depends in part on the legal status and powers of the Capitol Improvement Authority and the City of Tulsa. The Oklahoma Capitol Improvement Authority was created by the provisions of 73 O.S. 152 [73-152] (1971), which provides in part as follows: "(a) There is hereby created a body corporate and politic to be known as the 'Oklahoma Capitol Improvement Authority' and by that name the Authority may sue and be sued and plea and be impleaded. The Authority is hereby constituted an instrumentality of the state and the exercise by the Authority of the powers conferred by this act, in the construction, equipping, operation and maintenance of the state building or buildings (hereinafter referred as the 'building') shall be deemed and shall be held to be an essential governmental function of the state." Section 73 O.S. 163 [73-163] thereof provides in part: "The Authority is hereby authorized to acquire land for and to erect, equip, operate and maintain a building or buildings for the use of state and/or federal agencies and departments at any place or location within the state of Oklahoma, the place of erection to be selected by the Authority. . . ." The City of Tulsa is a municipal corporation, chartered under the provisions of the Oklahoma Constitution, Article XVIII, Section 3A and 11 O.S. 558 [11-558] (1971). Title 11 O.S. 401 [11-401] (1971) authorizes cities to: "401. For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of cities and incorporated villages is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes." It is clear from the foregoing constitutional and statutory provisions that the Capitol Improvement Authority and the City of Tulsa each has the power to regulate the construction and maintenance of buildings, within the limitations of their authority. The issue, then, is whether the Capitol Improvement Authority must submit to the authority of the City of Tulsa and purchase a building permit from the city before proceeding with the construction of the state-owned office building within the city limits of the City of Tulsa. Title 62 C.J.S., 157 states in part as follows: "Generally speaking, property of the State is exempt from municipal regulations in the absence of a waiver on the part of the State of its right to regulate its own property, and such waiver will not be presumed. The municipality cannot regulate or control any property within which the State has authorized another body or power to control." As stated in Section 73 O.S. 152 [73-152](a) of Title 73, the Oklahoma Capitol Improvement Authority is an instrumentality of the State of Oklahoma and the exercise of its powers in constructing and maintaining State buildings is deemed an essential governmental function of the State. Thus, the clear purport of the statute creating the Capitol Improvement Authority is that such corporate body will be an agency of the State of Oklahoma. In the early case of Kentucky Institution for Education of Blind v. City of Louisville, 97 S.W. 402 (1906), the City sought to apply its ordinance relating to fire escapes to a building of the Kentucky Institution for Education of the Blind. In words appropriate to the instant situation, the Court there stated that: ". . . Although the institution is created a body corporate, with power to contract, and to sue and be sued, it is essentially an instrument of the State government, belonging entirely to the State, and being completely under its control." In holding the city ordinance inapplicable to the Institution, the Court stated: ". . . The State will not be presumed to have waived its right to regulate its own property, by ceding to the city the right generally to pass ordinances of a police nature regulating property within its bounds. . . . The principle is that the State, when creating municipal governments, does not cede to them any control of the State's property situated within them, nor over any property which the State has authorized another body or power to control. The municipal government is but an agent of the State — not an independent body. It governs in the limited manner and territory that is expressly or by necessary implications granted to it by the State. It is competent for the State to retain to itself some part of the government even within the municipality, which it will exercise directly, or through the medium of other selected and more suitable instrumentalities. How can the city have ever a superior authority to the State over the latter's own property, or in its control and management? From the nature of things it cannot have." In Hall v. City of Taft,302 P.2d 574, the Supreme Court of California held that a municipal corporation's building regulations are not applicable to a school district's construction of a public school building in the municipality. There the Court stated in part: ". . . While a large degree of autonomy is granted to school districts by the Legislature, we are referred to no statute or constitutional provision which, as far as the question here involved is concerned, expressly makes school buildings or their construction any more amenable to regulation by a municipal corporation than structures which are built and maintained by the State generally for its use. When it engages in such sovereign activities as the construction and maintenance of its buildings, as differentiated from enacting laws for the conduct of the public at large, it is not subject to local regulations unless the Constitution says it is or the Legislature has consented to such regulation." (Emphasis added) This same conclusion was reached in the early case of City of Milwaukee v. McGregor, 121 N.W. 642, wherein the Court stated in part: "So the question comes down to whether the ordinary charter and ordinance regulations of a city requiring submission to local supervision, as regards the matter of constructing, altering and repairing buildings, have any application to state buildings. That must be answered in the negative. It is plainly so ruled by the familiar principle that statutes, in general terms, do not apply to acts of the State. Moreover, express authority to a state agency to do a particular thing in a particular way supersedes any local or general regulation conflicting therewith." (Emphasis added) In Board of Regents of the Universities and State College of Arizona v. City of Temple, 356 P.2d 399, where the City of Temple sought to apply its building codes and regulations to the construction of a building under the supervision of the Board of Regents for the University of Arizona, the Court again upheld the principle of law which holds that a municipality may not govern the acts of the sovereign state, absent specific consent by the Legislature. The Supreme Court of Arizona stated in part as follows: "The essential point is that the powers, duties and responsibilities assigned and delegated to a state agency performing a governmental function must be exercised free of control or supervision by a Municipality within whose corporate limits the state agency must act. . . . It is inconsistent with manifest Constitutional and legislative purpose to permit a municipality to exercise its own control over the Board's performance of those functions. A central, unified agency, responsible to the state officials rather than to the officials of each municipality in which a university or college is located, is essential to the efficient and orderly administration of a system of higher education responsive to the needs of all the people of the State." (Emphasis added) The above cited language from the Arizona case takes on more significance when Arizona's constitutional provision pertaining to the creation of home rule municipal corporations is compared with the similar provision in Oklahoma's Constitution. The provisions are virtually identical. See Arizona Constitution, Article XIII, 2 and Oklahoma Constitution, Article XVIII, Section 3(a) . The language from the preceding cases makes it clear that a state agency performing in a governmental capacity on behalf of the sovereign state is not amendable to regulations by a municipal corporation. Were it otherwise, municipalities, acting in behalf of the best interests of its citizenry, might seriously limit the effectiveness of state agencies performing functions of general concern to all the citizens of the state. The same reasoning is behind the rule that city charter provisions must yield to conflicting laws of general concern where the state has a sovereign interest. See Baughman v. Weicker, Okl.,276 P. 208, and State ex rel Burns v. Linn, Okl., 153 P. 826. Although the general principle of law holds that a State agency acting on behalf of the sovereign is free from municipal regulation of its property, it cannot be rationally disputed that the State Legislature is vested with the power to waive the State's right to such independence, and to cede to municipalities the authority to regulate the construction of all buildings within its boundaries, including those belonging to the State. However, the presumption is that the State will maintain control over its own property. Therefore any grant of power over State property by the Legislature to the municipalities must be expressly given and may not be implied by general statutory provisions. Has, then, the Oklahoma Legislature granted such authority to municipal corporations? Title 74 O.S. 324.11 [74-324.11] (1973) provides for the issuance of building permits by certain governmental bodies for the construction of buildings to be used for specifically enumerated purposes. Said section provides in part as follows: "A. No person, firm, corporation, partnership, organization, city, town, county or other subdivision of government shall commence the construction or major alteration of any building or structure to be used as a school, hospital, church, asylum, theater, meeting hall, hotel, motel, apartment house, rooming house, rest home, nursing home, day nursery, convalescent home, orphanage, auditorium, or install original equipment for the operation or maintenance thereof without obtaining a permit. Said permit, for which a charge may be made in conformity with the local ordinance, except as limited herein as to governmental agencies, shall be obtained from the city, town or county in whose jurisdiction the construction or alteration is planned. "E. No city, town or county requested to issue any such permit to any city, town, school district, county or other subdivision of government shall charge, assess or collect any fee or other charge for such permit except the regular and customary inspection fees fixed by ordinance for inspection of the work to be done under such permit, and no other charge, fee or other conditions of any kind under the authority of this title shall be made as a condition or a prerequisite to the obtaining of such permit by any such governmental agency." (Emphasis added) There are, however, two reasons why the provisions of Section 74 O.S. 324.11 [74-324.11] do not apply to the functions of the Capitol Improvement Authority. First, the Capitol Improvement Authority is not a "governmental subdivision" so as to be included in the list of enumerated groups to which Section 324.11 applies. The term "political or governmental subdivision", has not been clearly defined by the Courts of Oklahoma to the extent of setting out specific elements which are generally associated with such terms. However, those jurisdictions speaking to the specific issue are generally agreed as to the attributes which a "political subdivision" possesses. Courts speaking to the issue have held: "The attributes which are generally regarded as distinctive of 'political subdivisions' are that it exists for the purpose of discharging some function of local government, that it has prescribed area, and that it possesses authorities for subordinate self-government to officers selected by it." Dugas v. Beauregard,236 A.2d 87, 88, and State ex rel Masiano v. Mitchell,231 A.2d 539. In Arkansas State Highway Commission v. Clayton,292 S.W.2d 77, 79, the Court stated: ". . . Moreover, political subdivisions have been defined as that 'they embrace a certain territory and its inhabitants, organized for the public advantage and not in the interest of a particular individual or classes; that their chief design is the exercise of governmental function; and that to the electors residing within each is to some extent committed the power of local government, to be wielded immediately within their territory for the particular benefit of the people there residing.' " In the light of the above cited cases, it is clear that a "political subdivision" consists of basically the following elements: 1. Exists for the purpose of discharging some function of local government. 2. Has prescribed area. It is evident that the Capitol Improvement Authority does not possess the characteristic elements common to all governmental subdivisions. The Authority has no designated area of operation within the State, but instead is charged with the responsibility of carrying out its duties "at any place or location within the State of Oklahoma" which best meets the needs of the people of Oklahoma. Further, the Authority is responsible for the construction, equipment, and maintenance of buildings to be used for the benefit of all the people in the State of Oklahoma and not merely for the benefit of residents in a particular locality. The Capitol Improvement Authority clearly performs as an agent on behalf of the sovereign State and is therefore not a subdivision thereof. A fair reading of Subparagraph A of Section 324.11 will show that the statement ". . . except as limited herein as to governmental agencies . . ." has reference to those governmental groups enumerated earlier in Subparagraph A and does not encompass any agency acting on behalf of the State as opposed to those agencies enumerated which are subdivisions of the State. It is, therefore, our conclusion that the Capitol Improvement Authority, as an agency acting in a governmental capacity on behalf of the State, is not a subdivision of government and does not fall under any other group specifically enumerated in Section 324.11 and is therefore not subject to the provisions of that section. The second reason for holding Section 74 O.S. 324.11 [74-324.11] inapplicable to the present issue concerns the intended use of the building under construction by the Capitol Improvement Authority. The building is to be used as an office building for departments of the state and federal government. Such a particular use is not included in the list of specific building uses to which Section 324.11 is to apply. It is a fundamental principle of statutory construction that to include one thing in a description and not another is to exclude the latter. State v. Cline, 322 P.2d 208; Dorsett v. State, 144 Okl. 33, 289 P. 298. Therefore, Section 324.11 does not apply to the building with which we are here concerned. Based upon the considerations set forth in the above discussion, it is the opinion of the Attorney General that your question should be answered in the negative. In the absence of a specific grant of authority by the Legislature to the municipalities to regulate the State's property, the State retains the right to have its property free from municipal regulation. This principle applies to the Oklahoma Capitol Improvement Authority and to all State agencies. The State of Oklahoma has not granted to municipalities the authority to regulate the State's property. Therefore, the Capitol Improvement Authority may construct the State office building in the City of Tulsa without obtaining a building permit or otherwise complying with that city's building codes and regulations. (James H. Gray)