### UNITED STATES ELEVATOR CORPORATION, Appellee,

v.

### The CITY OF TULSA, Appellant,

v.

### OTIS ELEVATOR COMPANY, Appellant.

### No. 51805.

Supreme Court of Oklahoma.

April 29, 1980.

Alfred K. Morlan, Tulsa, for appellant City of Tulsa.

Arthur E. Rubin, Richard B. Noulles, Tulsa, for appellant Otis Elevator Co.

Jack R. Givens, Tulsa, for appellee.

IRWIN, Vice Chief Justice.

The issue presented is whether the Public Competitive Bidding Act of 1974 (61 O.S. §§ 101 *et seq.*), insofar as it relates to the advertising, receiving bids and awarding public improvement contracts, applies to a "Home Rule" municipality which has charter provisions for competitive bidding on public improvement contracts. If the Act is applicable we must then determine if the contract involved here is within its terms.

We hold the Act is not applicable[1] and reverse the judgment of the trial court.

The City of Tulsa (City), a "Home Rule" city, followed its charter provisions instead of the Act in advertising, receiving bids and awarding a contract for elevator maintenance service for two public buildings. Otis Elevator Company (Otis) was the successful bidder, and United States Elevator Company (USEC) was an unsuccessful bidder. After the contract was awarded to Otis, USEC brought an action seeking an injunction enjoining City from complying with its contract with Otis. In turn, City sought to have its contract with Otis declared invalid in the event USEC was granted its requested relief.

USEC's action is based upon its contention that public improvement contracts are of statewide concern, and City should have followed the Act instead of its charter provisions in advertising, receiving bids and awarding the service contract. On the other hand, City and Otis contend that since City (Tulsa) is a "Home Rule" city, and its charter provides for competitive bidding on contracts such as the one involved here, the Act was not applicable and the charter provisions were properly followed.

---

1. Our holding that the Public Competitive Bidding Act of 1974 (61 O.S.1974 Supp. §§ 101 *et seq.*) is not applicable in the case at bar should not be construed as holding that no provision of such Act is applicable to a "Home Rule" municipality which has charter provisions for competitive bidding on public improvement contracts. This is based on the theory that a home rule charter "is to become the organic law of such government, and is to supersede the laws of the state in conflict therewith, insofar only as they attempt to regulate merely municipal affairs." See *Lackey v. State*, 29 Okl. 255, 116 P. 913 (1911).

The parties stipulated that if the Act is applicable, its provisions were not followed. USEC does not contend that the charter provisions were not followed if they are applicable.

The trial court granted summary judgment to USEC and declared the contract between City and Otis invalid. City and Otis appealed.

The parties recognize that municipalities may adopt charters containing provisions not in accord with the general law, and insofar as such charter provisions conflict with the state law on subjects relating to purely municipal matters, the state law is thereby suspended. *City of Muskogee v. Senter*, 186 Okl. 174, 96 P.2d 534 (1939). Under this rule, the conflict between the supremacy of the state law and the exercise of municipal power under its charter is resolved by determining "whether such law pertains to general matters of the state and its government or pertains to municipal affairs." *Lackey v. State*, 29 Okl. 255, 116 P. 913 (1911).

The application of this principle in the light of the various decisions has been likened to cutting a path through a jungle. Merrill, "Constitutional Home Rule for Cities Oklahoma Version", 5 Okl.L.Rev. 139, 159 (1952). Professor Merrill said that in searching for the "harmonizing principle" to be applied in determining which items are "municipal affairs," we may not simplify the process by concluding that matters of general concern, and hence not "municipal affairs", are those which concern the state at large or affect the people generally. Nearly every function of any local government may be said to affect "the people generally" in this mobile society. Practically any action of a city will have an impact upon persons not permanent residents of that municipality.

There are no constitutional guidelines for awarding public improvement contracts by a municipality that are comparable to those involving municipal bonded indebtedness over which the state maintains its complete sovereignty. *Sublett v. City of Tulsa*, Okl., 405 P.2d 185 (1965). However, USEC urges

that this case may be resolved by resort to such constitutional provisions and other statutory provisions which arguably evidence an overriding state concern in the "economic" welfare of the municipalities of this state.

We do not find this argument persuasive. Article X, §§ 26, 27, and 35 of the Oklahoma Constitution, cited in this regard by USEC, relate to limitations on municipal indebtedness and procedures for incurring such indebtedness. They do not speak to the manner in which municipalities may carry on ordinary business affairs or for letting public building contracts. And we are not concerned here with how the contract in question will be paid or financed. Nor does the fact that the legislature has enacted numerous statutes concerning the financial affairs of a municipality, and the procedures to be used in providing for payments from certain funds dictate a finding that the Act pertains to general matters of state wide concern. We are concerned with a public improvement contract of a municipality and must determine whether the power which the City exercised in providing for its own bidding procedure "is purely municipal, or whether there is a wider public interest." *City of Wewoka v. Rodman*, 172 Okl. 630, 46 P.2d 334 (1935). Professor Merrill (5 Okl.L.Rev. 139, 161) in discussing the term "a wider public interest" said by using the phrase, attention was focused upon the true nature of the problem. That the term is

". . . not any single thing upon which we are to concentrate our attention. Rather, we are to take into account all the factors which center around the particular exercise of power and strike a balance to determine whether we can say there is a public interest 'wider' than a purely municipal interest. This we can not do by rule of thumb, but by a balancing of the interests affected by the matter under consideration. It is this overall consideration of factors involved which offers the best way to a satisfactory explanation of the otherwise oft perplexing course of decision."

Other cases decided by this court are instructive in determining whether this involves a "municipal affair". In what seems to be in conflict with USEC's contention that matters affecting the "economic" well being of a municipality are not "municipal affairs", the court in *Bodine v. Oklahoma City*, 79 Okl. 106, 187 P. 209 (1919) held that a county excise board could not second-guess the city government's discretion as to municipal needs. More recently, in *Moore Funeral Homes, Inc. v. City of Tulsa*, Okl., 552 P.2d 702 (1976) we held that the formation of a street improvement district, the levy of special assessment, and the procedure used in doing so were "municipal affairs".

USEC places great emphasis upon the dollar amount of the service contract, and urges that when all municipal contracts of this type are aggregated it involves a substantial amount of taxpayer funds. What is at issue here is not the amount of the contract, i. e. City's "indebtedness" and how it will be financed, but under which law (state or municipal) was City required to follow in letting the public improvement contract. In *City of Muskogee v. Senter, supra*, we said that in the absence of a charter provision prescribing the manner in which the City of Muskogee (a Home Rule city) could make contracts for professional services, the authority to make such contracts was governed by the general law of the state.

We need not determine whether the Act would be applicable to a "Home Rule" city whose municipal "law" did not provide for any "competitive bidding" procedure, or which expressly provided for some other method of letting contracts. We are satisfied that the specific procedures to be followed in advertising and accepting competitive bids on public improvement contracts is a "municipal affair" and outside the scope of that "wider public interest" which would allow the state law to supersede the municipal provisions of a "Home Rule" city. The particular manner in which a "Home Rule" municipality may let and approve public contracts based upon competitive bidding has no overriding impact beyond the municipality so as to authorize state interference in the conduct of such business affairs of the municipality.

Accordingly, we need not determine whether the service contract involved in this case would be otherwise covered by the provisions of the Act. Since it is not contended that the procedures followed by City in letting this contract did not comply with the requirements of the applicable law, i. e. the municipal law, the judgment of the trial court must be reversed, and the case remanded with instructions to deny USEC injunctive relief and enter judgment for City.

REVERSED AND REMANDED WITH INSTRUCTIONS.

All the Justices concur.