Dear Senator Corn:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 May a charter municipality adopt a charter provision that prohibits any state or federal employee from running for and being elected to a position on that charter municipality's governing body?
Your question involves the legal authority, if any, delegated to or conferred upon charter municipalities to adopt a charter provision that prohibits the candidacy for and the election to a position on the charter municipality's governing body by any state or federal employee.
 HOME RULE DOCTRINE AND MATTERS OF PURELY MUNICIPAL CONCERN
The Oklahoma Constitution, Article XVIII, Section 3(a), provides that a city with a population of more than two thousand inhabitants may become a charter municipality by framing a charter for its own government "consistent with and subject to the Constitution and laws of this State."Id. (emphasis added). In the Oklahoma Municipal Code, 11 O.S. 2001 
Supp. 2008, §§ 1-101 — 55-103 ("Municipal Code"), Section 13-109 states:
 Whenever a charter is in conflict with any law relating to municipalities in force at the time of the adoption and approval of the charter, the provisions of the charter shall prevail and shall operate as a repeal or suspension of the state law or laws to the extent of any conflict.
Id. (emphasis added). In State ex rel. Trimble v. City of Moore,818 P.2d 889, 898 n. 39 (Okla. 1991), the Oklahoma Supreme Court used the term "home rule" doctrine to describe the Municipal Code's Section 13-109. Trimble noted that under the home rule doctrine, "a city chartersupersedes conflicting state law on matters of purely municipal concern."Id. (emphasis added). Among the *Page 2 
issues addressed by Trimble was that of the compensation of the mayor and council members. Trimble found the compensation to be a matter of purely "municipal concern" such that the city charter controlled over statutory law, and thus was not a matter of general public concern.See id. The Oklahoma Supreme Court has found certain other matters to also be those of purely municipal or local concern. In Hampton ex rel.Hampton v. Hammons, 743 P.2d 1053, 1060 (Okla. 1987), the court reviewed several prior cases and stated:
 Matters found to be of local concern in Oklahoma include: removal of a municipal judge, off-street parking, recall elections of municipal officers, widening of a state highway within city limits, and the form of city government a municipality adopts.
Id. (footnotes omitted) (emphasis added). None of the matters listed include qualifications for municipal elected office.
In a case resolving a conflict between a municipal charter provision and state law in United States Elevator Corp. v. City of Tulsa,610 P.2d 791, 793 (Okla. 1980), the Oklahoma Supreme Court noted:
 [T]he conflict between the supremacy of the state law
and the exercise of municipal power under its charter is resolved by determining "whether such law pertains to general matters of the state and its government or pertains to municipal affairs."
Id. (emphasis added) (citation omitted). The questions you have presented likewise involve resolution between a municipal charter provision and inconsistent or conflicting state law.
 OKLAHOMA CONSTITUTION, ARTICLE XVIII, SECTION 3(a)
The Oklahoma Supreme Court interpreted the meaning of Article XVIII, Section 3(a) (formerly Section 3, subdivision "a") of the Oklahoma Constitution, under which provisions a city may frame a municipal charter. In State ex rel. Reardon v. Scales, 97 P. 584 (Okla. 1908), the court noted:
 All the power that a municipality has, or the citizens of a municipality may exercise, in framing a charter or an organic law for such city, is such as may be delegated to it by the Constitution of the state, or such authority pertaining to local government as may be conferred by the Legislature . The sovereign power rests in the people of the state in the aggregate, and not in any subdivision thereof.
Id. at 587 (emphasis added). Under Article XVIII, Section 3(a), a municipal charter is required to be consistent with and subject to the Oklahoma Constitution and laws of the State. The totality of the power thus conferred upon a municipality in framing its charter may either be delegated to it by the Oklahoma Constitution or conferred upon it by the Legislature. The Oklahoma Constitution is silent as to establishing any qualifications to either run for or be elected to a position on a charter municipality's governing body and delegates no such power to charter municipalities. *Page 3 
In City of Sapulpa v. Land, 223 P. 640 (Okla. 1924), the court again addressed the provisions of Article XVIII, Section 3(a) of the Oklahoma Constitution, noting that "it is manifest that it was the intention ofthe framers of the Constitution that all charter provisions must besubject to the general laws of the state." Id. at 642 (emphasis added).Land further noted:
 The great weight of adjudicated cases and text-writers support the rule that municipal corporations are bodies politic and corporate created by the Legislature as governmental agencies of the state, and they can only exercise such power as they derive from their source of creation. The powers which they exercise at all times are subject to legislative control. The state has the power to determine what matters are of general public concern.
Id. at 646 (emphasis added). Based upon such authority, municipal corporations are subject to state legislative control at all times and can only exercise such power as they derive from their source of creation, the Oklahoma Constitution and laws of the State, and the State has the power to determine what matters are of general public concern.
 POWER TO DETERMINE QUALIFICATIONS FOR MUNICIPAL ELECTED OFFICE IS PURELY A GENERAL POWER OF THE STATE
In Baughman v. Weicker, 276 P. 208, 210 (Okla. 1929), the court construed several provisions of the charter of the City of Oklahoma City as well as a statute, 1921 O.S. Ann. ch. 29, Art. IX, § 4513 (current version at 11 O.S. 2001, § 8-101[11-8-101]), relating to the establishment of qualifications for membership on that charter municipality's governing body. The statute at issue in that case, Section 4513, in pertinent part provided:
 All officers elected or appointed shall be qualified electors of the city, and all councilmen and members of the school board shall be actual residents of the ward for which they may be elected; and the removal of any officer from the city, or of any councilman or member of the school board from the ward for which he shall be elected, shall cause a vacancy in said office.
Id. (emphasis added). Section 4513 established the following qualifications for the position of a council member: citizenship, qualified elector[1] and residence. Further, the court noted that the *Page 4 
relevant municipal charter provision in question in that case "is in exact accord with section 4513, C. O. S. 1921." Id. at 213. The court stated:
 The power conferred upon a municipality to elect officers to fill the various offices of the city and to determine their qualifications is purely a general power of the state, and the exercise of such power by a city operating under a grant of charter power, from the state, shall not be inconsistent or in conflict with the state law .
Id. at 212 (emphasis added). The Oklahoma Supreme Court concluded that where a municipal charter does not include a provision that mirrors state law like that of Section 4513, the state statute controls over a municipal charter. Id. at 213. Accordingly, as the power to determine qualifications for municipal elected office is purely a general power of the State, a municipal charter may only contain qualifications for membership on the charter municipality's governing body that are not inconsistent or in conflict with state law. Id. at 212.
 OKLAHOMA MUNICIPAL CODE
The Municipal Code, Section 8-101, establishes the current qualifications for municipal elected office in Oklahoma as follows:
 A municipal elected official shall be a resident and a registered voter of the municipality in which he serves, and all councilmembers or trustees from wards shall be actual residents of their respective wards . If an elected official ceases to be a resident of the municipality, he shall thereupon cease to be an elected official of that municipality.
Id. (emphasis added). Thus, the three required qualifications for membership on a charter municipality's governing body provided in Section 8-101 of the Municipal Code are citizenship, registered voter and residence. In Baughman, two of the three qualifications, citizenship and residence, are identical to two of those qualifications required by the statute, 1921 O.S. Ann. ch. 29, Art. IX, § 4513 (current version at 11 O.S. 2001, § 8-101[11-8-101]). See id. 276 P. at 210. The third qualification in Section 8-101, that of a registered voter, differs slightly from the third qualification previously required in 1921 O.S. Ann. ch. 29, Art. IX, § 4513, which was that of a qualified elector. The only difference between the statutes is the additional requirement that the qualified elector shall also be registered as a voter. See 11 O.S. 2001, § 8-101[11-8-101].
Subject to certain exceptions not material here, 26 O.S.Supp. 2008, § 4-101[26-4-101] in pertinent part states, "Every person who is aqualified elector as defined by Section 1 of Article III of the Oklahoma Constitution shall be entitled to become a registered voter in theprecinct of his residence. . . ."[2] Id. (emphasis added). Section 8-101 of the Municipal Code thus retains two qualifications from 1921 *Page 5 
O.S. Ann. ch. 29, Art. IX, § 4513, and expands the concept of the third qualification — qualified elector — from its predecessor statute (Section 4513) to require the qualified elector to also be a registered voter. Under Baughman, the power to determine qualifications for municipal elected office is purely a general power of the State and a municipal charter may only contain qualifications for membership on the charter municipality's governing body that are not inconsistent or in conflict with state law. Id. at 212.
In a case involving the question of the extent of a legislative grant of power to municipalities, the effect of a municipality exceeding its power has been addressed by the Oklahoma Supreme Court. See Ex parteUnger, 98 P. 999 (Okla. 1908). The court opined:
 Municipal corporations can exercise only such powers of legislation as are given them by the lawmaking power of the state. Grants of such powers are strictly construed, and "any fairly reasonable doubt is resolved by the courts against the corporation, and the power is denied. *** All acts beyond the scope of the powers granted are void."
Id. at 1000 (citation omitted) (emphasis added). In Unger, the court concluded that to the extent the municipal ordinance in question exceeded the scope of the power delegated to municipalities by the Oklahoma Legislature, the ordinance was void. Under the authority ofUnger, the adoption of a charter provision by a charter municipality that is beyond the scope of its powers is void.
 CONCLUSION
The Oklahoma Constitution neither establishes any qualifications to either run for or be elected to a position on a charter municipality's governing body nor delegates any such power to charter municipalities. Section 8-101 of the Municipal Code places no restrictions on the employment status of any individual so as to prohibit a federal or state employee from running for or being elected as a member of a charter municipality's governing body. By its adoption of Section 8-101 and consistent with the holdings of Land and Baughman, the Oklahoma Legislature determined that the qualifications for municipal elected office specified in Section 8-101, being purely a general power of the State, are a matter of general public concern. In the exercise of a purely general power of the State, the Legislature did not place restrictions on state and federal employees so as to prevent such employees from running for and being elected to a position on a charter municipality's governing body. Instead, the Oklahoma Legislature chose to exercise such general power of the State itself through adoption of 11 O.S. 2001, § 8-101[11-8-101], and not confer any of such power upon charter municipalities.[3] Accordingly, a charter municipality has no authority under 11 O.S. 2001, § 8-101[11-8-101] to *Page 6 
adopt a charter provision prohibiting any state or federal employee from running for or being elected to a position on the charter municipality's governing body. Under the holding of Unger, the adoption of a charter provision by a charter municipality beyond the scope of its powers is void.
It is, therefore, the official Opinion of the Attorney Generalthat:
 A charter municipality has no authority delegated to it under Oklahoma Constitution Article XVIII, Section 3(a) or conferred upon it by the Legislature under 11 O.S. 2001, § 8-101[11-8-101], to adopt a charter provision that prohibits any state or federal employee from running for and being elected as a member of that charter municipality's governing body. See Baughman v. Weicker, 276 P. 208, 212-13 (Okla. 1929); Ex parte Unger, 98 P. 999, 1000 (Okla. 1908).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
BRYAN NEAL ASSISTANT ATTORNEY GENERAL
[1] Article III, Section1 of the Oklahoma Constitution states, "Subject to such exceptions as the Legislature may prescribe, all citizens of the United States, over the age of eighteen (18) years, who are bona fide residents of this state, are qualified electors of this state."
[2] See n. 1.
[3] It should be noted that Section 8-106 of the Municipal Code allows individuals to hold more than one office or position in a municipal government where the municipality's governing body so ordains. Section 8-106 in pertinent part states:
 A person may hold more than one office or position in a municipal government as the governing body may ordain. A member of the governing body shall not receive compensation for service in any municipal office or position other than his elected office.
Id. GLEN D. HAMMONDS ASSISTANT ATTORNEY GENERAL *Page 1